STATE OF NORTH CAROLINA v. HAZEL MAE JOLLEY

No. 237A84

(Filed 6 November 1984)

**Searches and Seizures § 10— evidence in plain view at crime scene—no warrant necessary**

Where a law enforcement officer enters private premises in response to a call for help, thereby comes upon what reasonably appears to be the scene of a crime, and secures the crime scene from persons other than law enforcement officers by appropriate means, all property within the crime scene in plain view which the officer has probable cause to associate with criminal activity is thereby seized within the meaning of the Fourth Amendment. Officers arriving at the crime scene thereafter and while it is still secured can examine and remove property in plain view without a search warrant.

ON appeal of right by the State of North Carolina from the decision of the Court of Appeals, 68 N.C. App. 33, 314 S.E. 2d 134 (1984), reversing judgment entered by *Brown, J.*, at the 25 May 1983 Session of Superior Court, RUTHERFORD County. Heard in the Supreme Court 8 September 1984.

Evidence for the state tended to show that on 28 December 1982 defendant shot and killed her husband, John Preston Jolley, at the Jolley residence on Oak Grove Road in Ellenboro. Mr. Jolley was shot with a .22 semi-automatic rifle. Immediately after shooting her husband, defendant dialed a telephone operator and asked that help be sent to the Jolley residence.

Members of a volunteer rescue squad and deputies from the Rutherford County Sheriff's Department responded to defendant's call for help. The rescue personnel arrived first and began performing emergency cardiopulmonary resuscitation procedures on Mr. Jolley. Deputy Summers of the sheriff's department was the first law enforcement officer to arrive. He arrived about 3:00 p.m. and saw the rescue technicians working on the victim, who was lying on the floor in front of a couch in the den-kitchen area of the house.[1] Deputy Summers observed a .22 semi-automatic rifle leaning against a chair about six feet from the victim. He also observed defendant kneeling on the floor of the kitchen, sobbing. Officer Summers decided to escort defendant out of the house because he felt that it would help her emotionally to be away from her husband's body. He took her outside and placed her in the front seat of his patrol car. He then returned to the house as rescue personnel were carrying the victim out to an ambulance. Deputy Summers testified that after the victim and the emergency personnel left, "I secured a rope and crime scene poster out of the trunk of my patrol car and roped off the residence the best I could. Officer Bill Watts came at that time and about that time Major Philbeck arrived. I had been there ten or fifteen minutes when Major Philbeck arrived." Major Philbeck went into the house as Summers and Watts were advising defendant of her Miranda rights. Summers then went into the house and conferred briefly with Philbeck, after which Summers drove defendant to the Rutherford County Jail.

---

1. The den and kitchen comprised one large room partially separated by a bar.

Major Philbeck testified that when he entered the house he saw a .22-caliber rifle lying in a chair next to a wall. He also found some spent cartridges and shells in the house. Philbeck stayed at the Jolley residence for six hours, after which he took the .22-caliber rifle and the cartridges and shells to the Rutherford County Jail. These items were introduced into evidence during defendant's trial.

Defendant's evidence tended to show that on 28 December 1982 her husband was resting on the sofa in their den when defendant decided to go shopping. Defendant intended to buy some bullets and took a rifle out of its gun rack in the den to see what kind of bullets it required. Defendant testified:

> I got it down and came in front of the T.V. and started toward the kitchen where the light was on where I could see to take one of the bullets out of the thing. The next thing I remember is that he was lying on the floor hurt. I threw the gun behind me and went to him. I don't remember the gun going off.

After the gun went off defendant dialed the telephone operator for help.

Defendant also introduced evidence to the effect that multiple discharges are common in the kind of gun used to shoot the victim.

Defendant was convicted of murder in the second degree and was sentenced to ten years in prison. Defendant appealed the judgment to the Court of Appeals, which reversed and remanded for a new trial. Because there was a dissenting opinion in the Court of Appeals, the state was entitled to an appeal of right to this Court pursuant to N.C.G.S. 7A-30(2).

*Rufus L. Edmisten, Attorney General, by Roy A. Giles, Jr., Assistant Attorney General, for the State.*

*Walter H. Dalton for defendant.*

MARTIN, Justice.

The sole issue in this appeal is whether the Court of Appeals erred in holding that the rifle transported to the Rutherford County Jail by Major Philbeck was improperly admitted into

evidence at trial. We hold that the Court of Appeals did so err, and thus we reverse.

As the opinion of the Court of Appeals notes, on 20 April 1983 defendant filed a motion to suppress the .22-caliber rifle and any test results from the gun. The basis of this motion was stated as follows:

> Its exclusion is required by the Constitution of the United States or the Constitution of North Carolina in that it resulted from an unreasonable search and seizure and in addition, it was obtained as a result of a substantial violation of the provisions of Chapter 15A of the General Statutes in that the sworn testimony of the officers involved at the probable cause hearing clearly show that the defendant was arrested at her home on December 28, 1982 and was taken to the Rutherford County Jail; thereafter, other officers proceeded to her residence without the authority of a search warrant and under no recognized exception to the requirement of a search warrant and entered the defendant's premises without the consent of the defendant and without her being present and in violation of law and thereafter, seized the .22 rifle, J. C. Higgins model, which the defendant now seeks to suppress, together with any test results relating to said rifle; that said intrusion into the defendant's home without the authority of a search warrant was unlawful and a substantial violation of her rights and in violation of the Fourth Amendment of the United States Constitution and in violation of Chapter 15A of the North Carolina General Statutes.

After a hearing the trial court made the following findings of fact:

> That on December 28, 1982 at 3:00 p.m., Deputy Michael Summers of the Rutherford County Sheriff's Department went to the home of John Preston Jolley and Hazel Mae Jolley to investigate a possible shooting; that he found John Jolley in the den on the floor and EMT personnel were working on him.

> That he saw a .22 rifle in a chair in the den area.

> That the Defendant, Hazel Mae Jolley, was in the kitchen area in a squatting position.

That Summers asked her to sit in the patrol car, that he thought getting her out of the house would help her emotional state, that he thereafter helped rope the area off to secure the scene, that he spoke with the defendant in his patrol [car] and advised her of her rights, on a form used by the Rutherford County Sheriff's Department.

. . . .

That Detective David Philbeck had arrived at the Jolley residence about five minutes after 3:00, and Summers turned control of the premises over to him.

That Philbeck went inside the residence where he made photographs, seized the rifle, spent cartridges, a lead fragment, made a diagram, and visually observed the premises.

The trial court then denied defendant's motion to suppress the gun and test results.

The Court of Appeals held that Philbeck had conducted a warrantless search not justified under either the consent to search or exigent circumstances exceptions to the warrant requirement of the fourth amendment to the United States Constitution. *See, e.g., Mincey v. Arizona,* 437 U.S. 385, 57 L.Ed. 2d 290 (1978). Therefore the Court of Appeals concluded that his removal of the gun was an illegal seizure and the gun and test results from it should not have been permitted into evidence.[2]

While the Court of Appeals' discussion of the two exceptions to the warrant requirement is interesting, it is irrelevant to the present set of facts. The Court of Appeals erred in failing to focus upon the key issue in the case: At what point was the rifle in question *seized* within the meaning of the fourth amendment?

We hold that when a law enforcement officer enters private premises in response to a call for help and thereby comes upon what reasonably appears to be the scene of a crime, and secures the crime scene from persons other than law enforcement officers by appropriate means, all property within the crime scene in plain

---

2. The record reveals that defendant did not object to Officer Summers' testimony about the gun. Thus she has waived all objections concerning the gun and its test results. N.C. Gen. Stat. § 15A-1446(b) (1983). Nevertheless, in our discretion we have decided to review the matter.

view which the officer has probable cause to associate with criminal activity is thereby lawfully seized within the meaning of the fourth amendment. Officers arriving at the crime scene thereafter and while it is still secured can examine and remove property in plain view without a search warrant. As the Supreme Court of the United States observed in *Mincey v. Arizona*, 437 U.S. 385, 392-93, 57 L.Ed. 2d 290, 300:

> We do not question the right of the police to respond to emergency situations. Numerous state and federal cases have recognized that the Fourth Amendment does not bar police officers from making warrantless entries and searches when they reasonably believe that a person within is in need of immediate aid. . . . And the police may seize any evidence that is in plain view during the course of their legitimate emergency activities.

(Citations and footnotes omitted.) *Accord Texas v. Brown*, 460 U.S. 730, 739, 75 L.Ed. 2d 502, 512 (1983) ("[I]f, while lawfully engaged in an activity in a particular place, police officers perceive a suspicious object, they may seize it immediately."). The present case is also similar to *State v. Robbins*, 275 N.C. 537, 545, 169 S.E. 2d 858, 863 (1969), in which this Court stated:

> In the instant case the officer was not engaged in a search for evidence to be used in a criminal prosecution. He entered defendant's dwelling at the request of defendant's brothers, who were very apprehensive and worried about defendant. Under the present law the officer would not have had any basis to request a search warrant since he could not allege a particular object which he sought. *State v. Bullard*, 267 N.C. 599, 148 S.E. 2d 565. He was simply lending the strong arm of the law to a distressed family who feared that harm had come to their brother and sister-in-law. The officer's presence was lawful and his testimony as to things in plain view was properly admitted into evidence.

*See also Illinois v. Andreas*, --- U.S. ---, ---, 77 L.Ed. 2d 1003, 1010 (1983) ("[O]nce police are lawfully in a position to observe an item first-hand, its owner's privacy interest in that item is lost. . . ."). *Cf. United States v. Jacobsen*, --- U.S. ---, ---, 80 L.Ed. 2d 85, 98 (1984) ("The agent's viewing of what a private party had freely made available for his inspection did not violate the Fourth

Amendment."); *Katz v. United States*, 389 U.S. 347, 351, 19 L.Ed. 2d 576, 582 (1967) ("What a person knowingly exposes to the public, even in his own home . . . is not a subject of Fourth Amendment protection."). *See Coolidge v. New Hampshire*, 403 U.S. 443, 29 L.Ed. 2d 564 (1971) (plurality opinion).

This holding is in accord with the following post-*Mincey* cases: *People v. Harding*, 620 P. 2d 245 (1980) (bloodstained wall-paper and bloodstained housecoat properly seized as evidence "in plain view"); *Wooton v. State*, 398 So. 2d 963 (Fla. App. 1981) (stressing seizure was of "items of evidence which were in plain view" and that there "was no inspection of drawers or closets"); *Grant v. State*, 374 So. 2d 630 (Fla. App. 1979) (weapons in plain view near body); *State v. Johnson*, 413 A. 2d 931, 934 (Me. 1980), *appeal after remand*, 434 A. 2d 532 (Me. 1981) (police who initially entered secured the premises and then waited outside until medical examiner and lab technician arrived, and then all entered; held, this a permissible reentry; "the police conducted a very limited search, seizing only items that were in plain view"); *State v. Anderson*, 42 Or. App. 29, 599 P. 2d 1225 (1979), *cert. denied*, 446 U.S. 920 (1980) (proper to maintain control of scene three hours and then record scene with videotape camera where "officers photographed only what was in plain view"); *State v. Eacret*, 40 Or. App. 341, 345, 595 P. 2d 490, 493 (1979) ("officers were entitled to photograph and seize evidence in plain view"); *State v. Martin*, 274 N.W. 2d 893 (S.D.), *cert. denied*, 444 U.S. 883 (1979).

"A 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property." *United States v. Jacobsen*, --- U.S. ---, ---, 80 L.Ed. 2d 85, 94 (1984) (footnote omitted). When an officer secures a crime scene he has limited the ability of persons other than law enforcement officers to remove items from within the secured area. *State v. Brown*, 306 N.C. 151, 293 S.E. 2d 569 (1982) (crime scene that had been cordoned off and secured by police was within the possession and control of the state); N.C. Gen. Stat. § 15A-903(d) (1983). Such items have thus been "seized." *See Hale v. Henkel*, 201 U.S. 43, 76, 50 L.Ed. 652, 666 (1906). Seizure of evidence in plain view by the securing of a crime scene is also analogous to seizure of a person: "[W]henever a police officer accosts an individual and restrains his freedom to walk away, he

State v. Jolley

has 'seized' that person." *Terry v. Ohio*, 392 U.S. 1, 16, 20 L.Ed. 2d 889, 903 (1968). *See also Michigan v. Summers*, 452 U.S. 692, 69 L.Ed. 2d 340 (1981).

It is clear that in the instant case Deputy Summers lawfully entered the Jolley residence reasonably believing that a person inside was in need of immediate aid. Defendant herself called the telephone operator to ask specifically that help be sent quickly. When Summers first entered the Jolley house, the rifle at issue was in plain view, six feet from where the victim was felled. Deputy Summers had probable cause to associate the rifle with criminal activity. *Texas v. Brown*, 460 U.S. 730, 75 L.Ed. 2d 502.[3] He thereupon secured the residence by roping it off and posting signs. He thereby lawfully seized the rifle. Because the rifle was lawfully seized, it was properly admitted into evidence. Philbeck, as a law enforcement officer who also arrived at the scene as a result of defendant's call for help, had every right to enter the area secured by Deputy Summers. Once lawfully inside this area he then properly transported to the county jail the rifle which was in plain view and which had been seized by the securing of the crime scene. It follows that the test results were likewise admissible.

We need not decide whether the additional items identified by Major Philbeck were competent as evidence, as defendant is not contesting their admission into evidence. The evidence at issue in this case was not obtained by a search, but was seized by being in plain view within the crime scene when it was secured by Deputy Summers. *See Mincey v. Arizona*, 437 U.S. 385, 57 L.Ed. 2d 290.

The decision of the Court of Appeals is

Reversed.

---

3. It was not necessary that the officer knew the rifle was evidence of a crime in order to comply with the "immediately apparent" requirement of *Coolidge v. New Hampshire*, 403 U.S. 443, 29 L.Ed. 2d 564 (1971). It is sufficient if the facts available to the officer would warrant a man of reasonable caution in the belief that the rifle may be useful as evidence of a crime. *Texas v. Brown*, 460 U.S. 730, 75 L.Ed. 2d 502 (1983).