STATE OF NORTH CAROLINA v. TERRY FRANKLIN LATHAN

No. COA99-411

(Filed 6 June 2000)

## 1. Evidence— hearsay—state of mind exception

The trial court did not err by admitting, under the state of mind exception to the hearsay rule, the testimony of several witnesses describing the victim's demeanor or attitude when she made statements prior to her death because: (1) the statement relating episodes where the victim was crying when she called one witness, and the statement that the victim appeared to be afraid when telling another witness that the victim had to be home on time or else defendant would "whip her ass," both described the victim's emotions; (2) the statement that the victim planned to leave defendant once the victim's son was out of school indicated the victim's state of mind prior to the murder; and (3) the statement concerning the victim's demeanor and change in personality when she discussed her recurrent beatings by defendant also falls within the ambit of Rule 803(3). N.C.G.S. § 8C-1, Rule 803(3).

## 2. Evidence— hearsay—state of mind exception—no prejudicial error

Although the trial court erred in admitting the hearsay testimony of four witnesses under the state of mind exception since their testimony was not accompanied by descriptions of the victim's emotions or mental state, but were instead only statements regarding past factual events, there was no prejudice since a different result in the case would not have been reached absent these improperly admitted statements. N.C.G.S. § 8C-1, Rule 803(3).

STATE v. LATHAN

[138 N.C. App. 234 (2000)]

**3. Homicide— second-degree murder—motion to dismiss— sufficiency of evidence**

The trial court did not err by denying defendant's motion to dismiss the charge of second-degree murder because evidence presented at trial that defendant pointed the rifle at the victim or in her direction and fired was sufficient to establish that he intentionally committed an inherently dangerous act that proximately caused the victim's death in a reckless and wanton manner manifesting a mind utterly without regard for human life. N.C.G.S. § 14-17.

**4. Homicide— second-degree murder—motion to dismiss— intent**

Although defendant contends his motion to dismiss the charge of second-degree murder should have been granted since the trial court's instruction required the jury to find that defendant intentionally killed the victim, the instructions are irrelevant to the motion to dismiss because: (1) the trial court's decision to deny the motion preceded the final instructions to the jury; and (2) the trial court instructed according to the pattern jury instruction, and the "intent" to which the charge refers is the intent to do the act that results in the death.

Appeal by defendant from judgment entered 24 April 1998 by Judge Sanford Steelman in Richmond County Superior Court. Heard in the Court of Appeals 16 February 2000.

*Michael F. Easley, Attorney General, by James C. Gulick, Special Deputy Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, for defendant-appellant.*

EDMUNDS, Judge.

Defendant Terry Franklin Lathan appeals his conviction of second-degree murder. We find no error.

At approximately 12:15 a.m. on 13 July 1996, the Hoffman Fire and Rescue unit received a call reporting a shooting. When volunteers arrived at the scene, defendant was standing beside his truck; his girl-friend, Lisa Barber, was dead inside the truck. When asked what happened, defendant stated: "I accidentally shot her. We were messing around with guns, and she reached for the barrel of the gun, and when

she pulled it the gun went off." The body was slumped over in the passenger side of the truck cab; it was wrapped in a quilt and had a single gunshot wound to the left breast area. Bruises consistent with attempted strangulation were found on her neck although other signs of strangulation were absent. The victim also was bruised about other parts of her body.

Defendant was indicted for first-degree murder. A jury returned a verdict of second-degree murder, and the trial court sentenced defendant to 141 to 179 months imprisonment.

## I.

**[1]** Defendant contends the trial court erred by admitting hearsay evidence. Several witnesses testified as to statements the victim made prior to her death. After conducting a *voir dire* hearing and considering arguments of counsel, the trial court admitted the statements pursuant to the state of mind exception to the hearsay rule. *See* N.C. Gen. Stat. § 8C-1, Rule 803(3) (1999). Defendant contends that the admission of these hearsay statements violated his Confrontation Clause rights as set forth in the Sixth and Fourteenth Amendments to the United States Constitution.

Under Rule 803(3), hearsay evidence may be admitted to show the declarant's "then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health)." This exception permits the introduction of hearsay evidence that tends to "indicate the victim's mental condition by showing the victim's fears, feelings, impressions or experiences," so long as any prejudicial effect of such evidence is not outweighed by its probative value under N.C. Gen. Stat. § 8C-1, Rule 403 (1999). *State v. Walker*, 332 N.C. 520, 535, 422 S.E.2d 716, 725 (1992) (citations omitted). Our Supreme Court has stated that the underlying policy supporting Rule 803(3) is the " 'fair necessity, for lack of other better evidence, for resorting to a person's own contemporary statements of his mental or physical condition.' " *State v. Hardy*, 339 N.C. 207, 229, 451 S.E.2d 600, 612 (1994) (quoting 6 John H. Wigmore, *Evidence* § 1714 (James H. Chadbourn rev. 1976)).

To be admissible under Rule 803(3), the testimony also must be relevant. *See State v. Bishop*, 346 N.C. 365, 379, 488 S.E.2d 769, 776 (1997). "It is well established in North Carolina that a murder victim's statements falling within the state of mind exception to the hearsay rule are highly relevant to show the status of the victim's relationship to the defendant." *State v. Scott*, 343 N.C. 313, 335, 471 S.E.2d 605, 618

**STATE v. LATHAN**

[138 N.C. App. 234 (2000)]

(1996) (citations omitted). A victim's state of mind also is relevant "if it relates directly to circumstances giving rise to a potential confrontation with the defendant." *State v. McLemore*, 343 N.C. 240, 246, 470 S.E.2d 2, 5 (1996) (citation omitted).

However, North Carolina courts have recognized limits to the reach of this hearsay exception. "Statements merely relating factual events do not fall within Rule 803(3) because, in contrast to statements of mental or physical condition, factual circumstances are provable by better evidence, such as the testimony of those who witnessed the events." *State v. Exum*, 128 N.C. App. 647, 654, 497 S.E.2d 98, 103 (1998) (citation omitted). Defendant contends that the challenged testimony provided by the following witnesses consists of inadmissible "recitation of fact" by the victim, rather than expression by the victim of her state of mind.

### Nellie Stubbs

Nellie Stubbs, the victim's mother, testified that the victim had told her: (1) that the victim had to be home by a certain time, and if she was late, defendant "would be standing in the door waiting on her"; (2) that defendant opposed the victim's use of the Stubbs' vehicle; (3) that defendant opposed people coming to his house to visit the victim; and (4) that the victim had prepared to leave defendant, but that she had stayed with him after he apologized.

### Rosalie Webb

Ms. Webb worked with the victim and had known the victim most of her adult life. Ms. Webb testified that the victim told her that defendant was "very, very jealous" of the victim.

### Carolyn Rainwater

Ms. Rainwater was the wife of the victim's former stepfather. Ms. Rainwater offered testimony that three weeks prior to the victim's death, the victim visited the witness but had to hurry home. The victim told Ms. Rainwater that she had to be home when defendant arrived "or he'd whip her ass." The witness stated: "I could see the fear there that if she didn't go she was going to be in trouble." Ms. Rainwater also testified that defendant "was jealous."

### Ollie Green

Ms. Green was a co-worker of the victim. She testified that one day the victim arrived at work with a mark on her face. When she

inquired as to how it happened, the victim told her that defendant and the victim had argued and that defendant had touched to her face a hot gun barrel.

### Barbara Beachum

While school was in session, Ms. Beachum regularly babysat for the victim's son. Shortly after she began working for the victim, Ms. Beachum noticed bruises on the victim's face. When asked what caused the bruising, the victim responded that she and defendant "got into it." Later, Ms. Beachum noticed that the victim had a "busted lip." The victim explained this by saying, "that fool is at it again." At some point, Ms. Beachum asked the victim why she stayed with defendant. The victim responded: "He's not like that when he's not drinking." Additionally, Ms. Beachum testified that during one of her last visits with the victim, the victim spoke of leaving defendant and going to live with her brother.

### Cathy Presley

Ms. Presley, another former co-worker of the victim, testified that the victim told her that defendant did not permit her to wear shorts to work. She also testified that although she never saw the victim come to work in shorts, the victim occasionally changed into shorts after she arrived at work and then changed back into pants prior to going home. Ms. Presley testified that the victim told her that "if she left him he would kill her." Additionally, when asked about bruises and a burn mark on her cheek, the victim told Ms. Presley that defendant caused them after becoming jealous of a man who made a pass at the victim.

### James E. Stubbs

Mr. Stubbs was the victim's stepfather. While driving the victim to Fayetteville, he asked the victim if defendant beat her. She responded that defendant had slapped her and that when her son was out of school for the summer, she was going to leave defendant.

### Robert Goins

Mr. Goins was the victim's supervisor at work. He testified to his conversation with the victim about her relationship with defendant. The victim mentioned being beaten by defendant. Mr. Goins also testified to the victim's demeanor during the conversation, saying that she was "[v]ery quiet, to herself," and she was "more introverted."

Statements that relate factual events, where those events tend to show the victim's state of mind at the time the statement is made, "are not excluded from the coverage of Rule 803(3) where the facts related 'serve . . . to demonstrate the basis for the [victim's] emotions.' " *Exum*, 128 N.C. App. at 654, 497 S.E.2d at 103 (alterations in original) (quoting *State v. Gray*, 347 N.C. 143, 173, 491 S.E.2d 538, 550 (1997)). As this Court has stated:

> "In the first place, it is in the nature of things that statements shedding light on the speaker's state of mind usually allude to acts, events, or conditions in the world, in the sense of making some kind of direct or indirect claim about them. . . .
>
> In the second place, fact-laden statements are usually deliberate expressions of some state of mind. . . . [I]t does not take a rocket scientist . . . to understand that fact-laden statements are usually purposeful expressions of some state of mind, or to figure out that ordinary statements in ordinary settings usually carry ordinary meaning. In the end, most fact-laden statements intentionally convey something about state of mind, and if a statement conveys the mental state that the proponent seeks to prove, it fits the [federal rule 803(3)] exception."

*Id.* at 655, 497 S.E.2d at 103 (alterations in original) (quoting 4 Christopher B. Mueller & Laird C. Kirkpatrick, *Federal Evidence* § 438, at 417-18 (2d ed. 1994) (explaining the federal courts' broad reading of federal rule 803(3))).

A review of cases indicates that North Carolina appellate courts have recognized tacitly that statements in which a victim's state of mind is explicated by attendant facts may be admissible pursuant to Rule 803(3). *See State v. Brown*, 350 N.C. 193, 513 S.E.2d 57 (1999) (expression of concern about financial conditions and statement that marriage was troubled held admissible); *State v. Murillo*, 349 N.C. 573, 509 S.E.2d 752 (1998) (testimony regarding voice-activated records and statements from victim indicating her intent to end the marriage reflected her state of mind; *but* testimony that bruise resulted from defendant throwing victim into wall held inadmissible as mere recitation of fact), *cert. denied*, 528 U.S. 838, 145 L. Ed. 2d 87 (1999); *State v. Gary*, 348 N.C. 510, 501 S.E.2d 57 (1998) (statement that if victim left, defendant would kill her was "admissible to show the victim's fear at the time of the conversation with [witness] and to demonstrate the basis for her fear, namely, the threat to her life"); *Bishop*, 346 N.C. 365, 488 S.E.2d 769 (statements expressing the vic-

tim's concern about defendant's handling of her real estate transactions and her intent to document defendant's debt, to seek repayment, and to confront defendant about her concern that defendant had stolen from her "bore directly on the relationship between the victim and defendant at the time of the killing and were relevant to show a motive for the killing"); *State v. Lambert*, 341 N.C. 36, 460 S.E.2d 123 (1995) (victim's statements that his marriage "wasn't getting along like it should" and that he was leaving held admissible statements of victim's then-existing state of mind); *State v. Marecek*, 130 N.C. App. 303, 502 S.E.2d 634 (statements that defendant was having an affair, that he didn't touch victim anymore and they no longer had sexual relations, and that defendant had bought a life insurance policy held inadmissible hearsay), *disc. review denied*, 349 N.C. 532, 526 S.E.2d 473 (1998); *State v. Hayes*, 130 N.C. App. 154, 502 S.E.2d 853 (1998) (testimony regarding defendant's threats to kill victim, defendant's statement to victim that she would be the next "Nicole Simpson," and defendant's urinating on the kitchen floor and wiping victim's hair in the urine "shed light on her state of mind, her emotions and her physical condition"), *aff'd as modified in part, disc. review improvidently allowed in part*, 350 N.C. 79, 511 S.E.2d 302 (1999).

Thus, where a statement was made in isolation, unaccompanied by a description of emotion, courts have tended to find that hearsay testimony relating that statement falls outside the scope of Rule 803(3). Conversely, where the witness described the victim's demeanor or attitude when making the statement, the courts have tended to admit the testimony pursuant to 803(3).

Applying this principle to the case at bar, we observe that the challenged testimony of Ms. Webb, when viewed as a whole, described the victim's emotions by relating episodes where the victim was crying when she called her. Therefore, this testimony was properly admitted. Next, Ms. Rainwater's testimony also fits the pattern recognized by our courts. She stated that the victim appeared to be afraid when telling Ms. Rainwater that she had to be home on time or else defendant would "whip her ass." Mr. Stubbs' testimony that the victim planned to leave defendant once her son was out of school indicated the victim's state of mind prior to the murder. Similarly, Mr. Goins' testimony as to the victim's demeanor and change in personality when she discussed her recurrent beatings by defendant fell within the ambit of Rule 803(3).

.

**[2]** By contrast, the testimony of Ms. Stubbs, Ms. Green, Ms. Beachum, and Ms. Presley was inadmissible. Their testimony was unaccompanied by descriptions of the victim's emotions or mental state, but were instead only statements regarding past factual events. However, we see no prejudice to defendant. The trial court's failure to admit or exclude evidence will not be considered prejudicial unless the defendant can demonstrate with a reasonable possibility that "had the error not been committed, a different result would have been reached." *State v. Allen*, 127 N.C. App. 182, 186, 488 S.E.2d 294, 297 (1997). No such showing has been made here, nor do we perceive any likelihood that a different verdict would have resulted had the improper testimony not been heard by the jury. There was sufficient evidence to support defendant's conviction without the improperly admitted statements. Defendant's assignments of error relating to admission of hearsay evidence are overruled.

II.

**[3]** Defendant also contends the trial court erred by denying his motion made at the conclusion of the State's case and renewed at the close of all evidence to dismiss the charge of second-degree murder. The law governing the trial court's evaluation of a motion to dismiss is well-defined:

> "The question for the court in ruling upon defendant's motion for dismissal is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If substantial evidence of both of the above has been presented at trial, the motion is properly denied. . . . In considering a motion to dismiss, the evidence must be considered in the light most favorable to the State and the State is entitled to every reasonable intendment and every reasonable inference to be drawn therefrom. . . . Contradictions and discrepancies in the evidence are strictly for the jury to decide. . . ."

*State v. Huggins*, 71 N.C. App. 63, 66, 321 S.E.2d 584, 586-87 (1984) (alterations in original) (quoting *State v. Lowery*, 309 N.C. 763, 766, 309 S.E.2d 232, 235-36 (1983) (internal citations omitted)), *quoted in State v. Childers*, 131 N.C. App. 465, 471, 508 S.E.2d 323, 328 (1998). " 'Substantial evidence' is relevant evidence that a reasonable mind might accept as sufficient to support a conclusion." *Gary*, 348 N.C. at 522, 501 S.E.2d at 66 (citation omitted).

Second-degree murder is defined under N.C. Gen. Stat. § 14-17 (1999) as the " 'unlawful killing of a human being with malice, but without premeditation and deliberation.' " *State v. Mapp*, 45 N.C. App. 574, 579, 264 S.E.2d 348, 353 (1980) (quoting *State v. Duboise*, 279 N.C. 73, 81, 181 S.E.2d 393, 398 (1971) (citation omitted)). "[M]alice necessary to establish second-degree murder may be inferred from conduct evincing " 'recklessness of consequences' " or " 'a mind regardless of social duty and deliberately bent on mischief,' " such as manifests a total disregard for human life." *State v. Rich*, 132 N.C. App. 440, 452, 512 S.E.2d 441, 450 (1999) (quoting *State v. Wilkerson*, 295 N.C. 559, 578-79, 247 S.E.2d 905, 916 (1978) (quoting *State v. Wrenn*, 279 N.C. 676, 687, 185 S.E.2d 129, 135 (1971) (Sharp, J., dissenting))), *aff'd*, 351 N.C. 386, 527 S.E.2d 299 (2000). While intent to kill is not an essential element, *see State v. Lang*, 309 N.C. 512, 308 S.E.2d 317 (1983), the crime cannot exist without some intentional act in the chain of causation leading to death, *see Wilkerson*, 295 N.C. at 580, 247 S.E.2d at 917.

There was ample evidence that defendant and the victim were embroiled in a tempestuous relationship. Mr. Jessie Locklear testified for the State that defendant described the shooting to him. According to Mr. Locklear, defendant and the victim had words the night of the shooting, and she tried to leave him. Defendant followed her with a high-powered rifle and fired a shot at her legs to frighten her. They returned to the house and continued arguing. Defendant then pointed the rifle at the victim or in her direction and fired. He realized she was hit, but added that he had not intended to kill her. This evidence was sufficient to establish that by shooting at the victim or in her direction, defendant intentionally committed an inherently dangerous act that proximately caused the victim's death in a reckless and wanton manner manifesting a mind utterly without regard for human life. *See State v. Snyder*, 311 N.C. 391, 317 S.E.2d 394 (1984). The trial court properly denied defendant's motion to dismiss.

**[4]** Defendant also contends his motion to dismiss should have been granted because the trial court's second-degree murder instruction required the jury to find that defendant intentionally killed the victim. This argument fails because the court's decision to deny defendant's motion to dismiss preceded the final instructions to the jury; therefore, the instructions are irrelevant to the earlier motion to dismiss. Moreover, we perceive no error in the instructions. The record reveals that the able trial judge instructed the jury in accordance with the pattern instruction for second-degree murder. In accordance with the pattern, the judge advised the jury in pertinent part:

Second [d]egree [m]urder differs from first degree murder in that neither specific intent to kill, premeditation, nor deliberation are necessary elements. In order for you to find the defendant guilty of second degree murder the State must proof [sic] beyond a reasonable doubt that the defendant unlawfully, intentionally, and with malice killed the victim.

As noted in footnote nine to the pattern instruction, the "intent" to which this charge refers is the intent to do the act that results in the death. N.C.P.I., Crim. 206.13, fn. 9; *see State v. Ray*, 299 N.C. 151, 158, 261 S.E.2d 789, 794 (1980). The instruction was therefore correct. This assignment of error is overruled.

No error.

Judges LEWIS and JOHN concur.