STATE OF NORTH CAROLINA v. CHRISTOPHER QUINN EARWOOD

No. COA02-48

(Filed 21 January 2003)

**1. Confessions and Incriminating Statements— custody—voluntariness—motion to suppress**

The trial court did not err in a first-degree murder case by denying defendant's motion to suppress his statements made to various police officers, because: (1) the statements were voluntarily made as either spontaneous or excited utterances when defendant came to the police looking for help after he had shot himself and spontaneously and voluntarily informed the officers that defendant had killed his mother; (2) defendant was not in custody at any time during these statements, and even if he had been, it is not an interrogation by officers to ask an individual to clarify volunteered spontaneous utterances; and (3) there were no circumstances of compulsion or of coercive police practices.

**2. Search and Seizure— warrantless search—motion to suppress—plain view**

The trial court did not err in a first-degree murder case by denying defendant's motion to suppress the evidence taken by officers from the home of the victim on 13 August 1998 without a search warrant, because: (1) officers were responding to information provided to them by the eventual defendant; (2) the officers' entry into the house was lawful since officers are authorized to enter buildings when they believe it reasonably necessary to save a life or prevent serious bodily harm; (3) it was not an illegal search and seizure for the detectives to come into the house later while it was still secure to collect the evidence that had already been seized; and (4) defendant did not object to anything that was seized as not being in plain view.

**3. Evidence— hearsay—state of mind exception—victim afraid of defendant**

The trial court did not err in a first-degree murder case by allowing under the state of mind exception of N.C.G.S. § 8C-1, Rule 803(3) the testimony of two witnesses that the victim was afraid that her son would kill her based upon their conversations with the victim, because the witnesses adequately described the emotional state of the victim.

**STATE v. EARWOOD**

[155 N.C. App. 698 (2003)]

**4. Homicide— first-degree murder—felony murder—robbery with a dangerous weapon—sufficiency of evidence**

The trial court did not err by submitting to the jury the issue of first-degree murder under the felony murder theory even though defendant contends there was insufficient evidence of the underlying felony of robbery with a dangerous weapon, because: (1) the State introduced sufficient evidence to give a reasonable inference that defendant killed his victim mother to take her vehicle since defendant was not going to get a vehicle of his own; and (2) it is irrelevant that defendant stole the car after killing the victim.

**5. Homicide— felony murder—armed robbery—jury instruction—doctrine of recent possession**

The trial court did not err in a first-degree felony murder case based upon the felony of armed robbery by submitting to the jury the instruction on the doctrine of recent possession based on defendant's possession of the victim's car after the victim was murdered, because the evidence showed that defendant wanted a car, argued with the victim about purchasing one for him, killed the victim, and drove off with her car before wrecking it.

Appeal by defendant from judgment entered 16 February 2001 by Judge James R. Vosburgh in Davidson County Superior Court. Heard in the Court of Appeals 18 September 2002.

*Attorney General Roy Cooper, by Assistant Attorney General Thomas G. Meacham, Jr., for the State.*

*Charles H. Harp, II, for defendant appellant.*

McCULLOUGH, Judge.

Defendant Christopher Quinn Earwood was indicted for first-degree murder of his mother, Lori Earwood, on 31 August 1998. Defendant was tried before The Honorable James R. Vosburg at the 5 February 2001 Criminal Session of Davidson County Superior Court.

At trial, the evidence for the State tended to show that at approximately 1:25 a.m. on 13 August 1998, two officers from the Kannapolis Police Department were sitting in their respective vehicles when defendant approached them. The officers noticed that defendant's shirt had bloodstains on it. Defendant stated that he had shot himself

and that he needed help. They informed defendant to continue approaching with his hands raised. One of the officers asked about the location of the gun to determine if defendant was armed. Defendant replied that he left it in a vehicle that he had abandoned on I-85. While one officer was tending to his wounds, defendant informed the other officer that he had shot his mother. While questioning defendant, the officer got her address in Lexington and sent it to the authorities in Davidson County. Rowan County EMS arrived shortly thereafter, treated defendant, and took him to the hospital without a police escort. At this point, the officer who had been speaking with defendant set off to locate the abandoned vehicle.

A trooper of the North Carolina State Highway Patrol had located the vehicle, a white Nissan Altima, shortly after midnight. It was wrecked in the median of I-85. When it was found, the doors were open, the lights were on, the engine was warm and blood splatters were on the interior. The trooper was dispatched to the location where the Kannapolis police officers were talking with defendant. The trooper arrived as defendant was in the ambulance, and spoke with him about the vehicle. Defendant informed him that the vehicle was his mother's, and he had been traveling at a high rate of speed, about 100 m.p.h., in an attempt to kill himself. He told the trooper that he had killed his mother.

At 1:54 a.m. on the same morning, a deputy of the Davidson County Sheriff's Department arrived at the home of Lori Earwood, defendant's mother, to perform a check on the premises and the occupant because of the reported shooting. A lieutenant arrived on the scene to assist. The officers received no response from inside the home after knocking on the front and back doors. The officers returned to the front porch and found what appeared to be blood. The officers then entered the house presumably to assist anyone who may have been inside. This was at approximately 2:32 a.m. Inside they found the body of Lori Earwood lying on the floor, apparently deceased. Handcuffs were attached to her left wrist. Davidson County EMS later confirmed that the victim was dead.

At 3:10 a.m., a detective from the Davidson County Police Department arrived on the scene to collect evidence. The detective knew the victim, as she was a deputy in the Davidson County Sheriff Department. The detective found evidence of a struggle, fired shell casings near the body, wounds on the hands of the victim, and the handcuffs. The detective also searched the wrecked Altima after

STATE v. EARWOOD

[155 N.C. App. 698 (2003)]

obtaining a search warrant. That search produced a .25 caliber Beretta, $175 in cash, and three checks made out to the victim.

Around 3:30 a.m., defendant was placed in custody for the murder of the victim while at the hospital receiving treatment.

The victim was determined to have five gunshot wounds, one of which was to the head. The wounds to her hands were noted as defensive wounds.

The State Bureau of Investigation (SBI) matched bullets from the victim's body and the shell casings found at the scene to the gun found in the vehicle. The SBI also matched blood samples from the inside of the victim's home, the victim's clothes and vehicle to defendant.

Witnesses for the State testified that defendant came to live with the victim on 2 August 1998. The victim feared her son and kept a deadbolt lock on her bedroom door. The victim also owned two handguns. In addition, the victim had informed one of her friends that she and defendant had an argument on the morning of 12 August 1998, and that it was her belief that defendant would kill her. The victim arrived home at approximately 11:20 p.m. on that day, shortly after which the next door neighbor heard loud noises described as "boom, boom, boom" from within the home.

Defendant did not present any evidence. The jury found him guilty of first-degree murder under the felony murder rule on 15 February 2001. He was sentenced to life without parole on 16 February 2001.

Defendant presents the following questions on appeal: The trial court committed reversible error by (I) denying its motion to suppress statements made by defendant and by allowing testimony of those statements into evidence; (II) denying its motion to suppress evidence obtained from his residence without a warrant and by allowing testimony and the introduction of evidence from said warrantless search; (III) allowing the testimony of Lisa Kaufman and Judy Lawrence regarding conversations with the victim pursuant to Rule 803(3); (IV) instructing and submitting to the jury the issue of first-degree murder under the theory of felony-murder; and (V) instructing the jury on the doctrine of recent possession; and (VI) denying its motion for mistrial based on the introduction of inadmissible evidence.

I.

**[1]** In his first assignment of error, defendant contends that the trial court erred by denying his motion to suppress his statements made to the various police officers.

> "It is well established that the standard of review in evaluating a trial court's ruling on a motion to suppress is that the trial court's findings of fact " 'are conclusive on appeal if supported by competent evidence, even if the evidence is conflicting.' " " However, the determination of whether a defendant was in custody, based on those findings of fact, is a question of law that is fully reviewable by this Court. Likewise, a trial court's conclusion that a defendant's statements were voluntary is a conclusion of law that is fully reviewable on appeal.

> It is well established that *Miranda* warnings are required only when a defendant is subjected to custodial interrogation. In *Miranda*, the United States Supreme Court defined "custodial interrogation" as "questioning initiated by law enforcement officers after a person has been taken into custody or deprived of his freedom of action in any significant way." "[T]he appropriate inquiry in determining whether a defendant is 'in custody' for purposes of *Miranda* is, based on the totality of the circumstances, whether there was a 'formal arrest or restraint on freedom of movement of the degree associated with a formal arrest.' "

*State v. Patterson*, 146 N.C. App. 113, 120-21, 552 S.E.2d 246, 253 (citations omitted), *disc. review denied*, 354 N.C. 578, 559 S.E.2d 548 (2001).

Defendant argues that his statements to the Kannapolis police officers and the state trooper should be suppressed because they were not voluntarily made and he was in their custody at the time. As to the officers, defendant stresses that he was in the officers presence, was asked to approach the vehicle with his hands above his head, and was seated on the ground in front of a police vehicle when he was questioned by the officers. They continued to question him after he admitted that he had done "something bad" and had "shot someone" without giving him the benefit of a *Miranda* warning. As to the trooper, defendant points out that he was in the back of the ambulance while being questioned, again without the benefit of any *Miranda* warnings. Defendant contends that at no time was he free to leave.

STATE v. EARWOOD

[155 N.C. App. 698 (2003)]

The trial court ruled that the statements were voluntarily made, being "either spontaneous or excited utterances," and that defendant was not in custody. We agree.

The key here is that defendant came to the police looking for help because he had shot himself. When officers attempted to ascertain what happened to him, defendant spontaneously and voluntarily informed them that he killed his mother. The same thing happened while defendant was in the ambulance, when he volunteered the same information to the trooper. We agree with the trial court that the record shows that defendant was not in custody at any time during these statements. Even if defendant had been in custody, it is not an interrogation by police officers to ask an individual to clarify volunteered spontaneous utterances. *See State v. Porter*, 303 N.C. 680, 692, 281 S.E.2d 377, 385-86 (1981) ("[T]o constitute an 'interrogation' within the meaning of *Miranda*, the conduct of the police must involve a measure of compulsion."); *see also State v. Sykes*, 285 N.C. 202, 205, 203 S.E.2d 849, 851 (1974) (*Miranda* warnings are not required when police activity is limited to a "general on-the-scene investigation."). There are no circumstances of compulsion nor of coercive police practices present in this case.

The trial court's findings are based on competent evidence, and this assignment of error is overruled.

II.

[2] Defendant's second assignment of error contends that the trial court erred by denying his motion to suppress the evidence taken from the home of the victim on 13 August 1998.

In this case, the police did not obtain a search warrant at any time during the investigation of the house of the victim on 13 August 1998. This investigation started around 2:30 a.m. with the entry by police and lasted until almost noon of 13 August 1998. Defendant argues that the investigation was an illegal search because there was no warrant, nor are any of the exceptions for the warrant requirement met as defendant had been staying at the home since 2 August 1998 and never gave consent nor were there any exigent circumstances.

The trial court denied defendant's motion based on *State v. Jolley*, 312 N.C. 296, 321 S.E.2d 883 (1984), *cert. denied*, 470 U.S. 1051, 84 L. Ed. 2d 816 (1985). In that case, our Supreme Court held:

We hold that when a law enforcement officer enters private premises in response to a call for help and thereby comes upon what reasonably appears to be the scene of a crime, and secures the crime scene from persons other than law enforcement officers by appropriate means, all property within the crime scene in plain view which the officer has probable cause to associate with criminal activity is thereby lawfully seized within the meaning of the fourth amendment. Officers arriving at the crime scene thereafter and while it is still secured can examine and remove property in plain view without a search warrant.

*Id.* at 300-01, 321 S.E.2d at 886.

In *Jolley*, officers were responding to a call made by the defendant that she had shot her husband in the home. When the officers entered the home, they did so lawfully "reasonably believing that a person inside was in need of immediate aid." *Id.* at 303, 321 S.E.2d at 887. The officers saw a rifle in plain view, and "had probable cause to associate the rifle with criminal activity." *Id.* at 303, 321 S.E.2d at 888. Thus, by securing the scene at the house, the officers had lawfully seized the rifle.

Defendant attempts to distinguish on the basis that the officers in *Jolley* were responding to a call for help from inside the home. However, this is unavailing as nothing in the *Jolley* opinion suggests that the holding is limited to such facts. In both cases, the police were responding to information provided to them by the eventual defendants. In the present case, the initial officer arrived at the scene because of a reported possible shooting. He inspected the outside of the house, looked in windows, and knocked on the door. He never got any response. A lieutenant arrived at the scene, and the officers again tried to get a response to no avail. After returning to the front porch, they spotted what appeared to be blood on the front porch. They then entered the premises and found the victim. The officer's entry into the house was lawful, as officers are authorized to enter buildings when they believe it reasonably necessary to save a life or prevent serious bodily harm. N.C. Gen. Stat. § 15A-285 (2001); *State v. Braswell*, 312 N.C. 553, 556, 324 S.E.2d 241, 244 (1985). Once the officers were lawfully in the house, they secured the scene by taping off the perimeter. This, according to *Jolley*, was also the point in which all evidence was seized. Therefore, it was not an illegal search and seizure for the detectives to come into the house later while it was still secure to collect the evidence, for it had already been seized. We note that at the motion to suppress hearing, de-

fendant did not object to anything that was seized as not being in plain view.

We therefore hold that *Jolley* is controlling in the case *sub judice* and overrule defendant's assignment of error.

## III.

**[3]** Defendant's next assignment of error contends that the trial court erred by allowing the testimony of two witnesses that knew the victim to be afraid that her son would kill her. Defendant argues that the trial court should not have allowed the testimony because there was insufficient foundation presented as to the demeanor of the victim. *See State v. Lathan*, 138 N.C. App. 234, 530 S.E.2d 615, *disc. review denied*, 352 N.C. 680, 545 S.E.2d 723 (2000).

Lisa Kaufman testified at trial that she had worked with the victim for 11 years, they were very close friends and spoke everyday. She testified that the victim told her that she had put a deadbolt lock on her bedroom because she was afraid of defendant. She further testified that she spoke with the victim over the phone on 12 August 1998 six different times. She testified that the victim told her that she and defendant had an argument that morning. As to these conversations, Ms. Kaufman testified that the victim was very sad and was crying, and that she said she was scared because she thought that defendant was going to kill her.

Judy Lawrence testified at trial that she was the victim's cousin, close friend and next-door neighbor. She also spoke daily with the victim and knew of the deadbolt lock. Ms. Lawrence testified that she spoke with the victim over the phone on the evening of 12 August 1998. The victim was upset because of an argument she had with defendant over buying him a vehicle. Ms. Lawrence also stated that the victim had been upset at work a week before her death as she was afraid to go home because of defendant.

The trial court admitted this testimony over defendant's objections pursuant to the state of mind exception to the hearsay rule. *See* N.C. Gen. Stat. § 8C-1, Rule 803(3) (2001).

> Under Rule 803(3), hearsay evidence may be admitted to show the declarant's "then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health)." This exception permits the introduction of hearsay evidence that tends to "indicate the

victim's mental condition by showing the victim's fears, feelings, impressions or experiences[.]"

*Lathan*, 138 N.C. App. at 236, 530 S.E.2d at 618. *Lathan* noted that there are limitations on this exception to the hearsay rule, notably that statements which only relate factual events are not indicative of the speaker's state of mind.

> Thus, where a statement was made in isolation, unaccompanied by a description of emotion, courts have tended to find that hearsay testimony relating that statement falls outside the scope of Rule 803(3). Conversely, where the witness described the victim's demeanor or attitude when making the statement, the courts have tended to admit the testimony pursuant to 803(3).

*Id.* at 240, 530 S.E.2d at 621.

After examining the testimony of the witnesses complained of, we are of the opinion that the statements were properly admitted as the witnesses adequately described the emotional state of the victim. Therefore, the trial court was correct in allowing the testimony to come in under Rule 803(3), and this assignment of error is overruled.

IV.

[4] Defendant's next assignment of error contends that the trial court erred by submitting the issue of first-degree murder under the felony-murder theory to the jury. A murder committed in the perpetration of any robbery is murder in the first degree. N.C. Gen. Stat. § 14-17 (2001). Defendant objected to the trial court's instructing the jury on this theory and was overruled.

Initially, defendant appears to argue that the State should have been required to indict defendant on the underlying felony. As the State points out, this issue has been decided against defendant in *State v. Carey*, 288 N.C. 254, 274-75, 218 S.E.2d 387, 400 (1975), *death sentence vacated*, 428 U.S. 904, 49 L. Ed. 2d 1209 (1976); *State v. Dudley*, 151 N.C. App. 711, 716, 566 S.E.2d 843, 847 (2002).

The crux of defendant's argument, however, is that there was insufficient evidence of the underlying felony, which was armed robbery with a dangerous weapon, to support its submission to the jury. The State is required to present "substantial evidence (a) of each essential element of the offense charged, or of a lesser offense included therein, and (b) of defendant's being the perpe-

trator of the offense." *State v. Earnhardt*, 307 N.C. 62, 65-66, 296 S.E.2d 649, 651 (1982). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Smith*, 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980). Whether the evidence presented is substantial is a question of law for this Court. *State v. Stephens*, 244 N.C. 380, 93 S.E.2d 431 (1956).

Under N.C. Gen. Stat. § 14-87 (2001), an armed robbery or robbery with firearms is defined as the taking of the personal property of another in his presence or from his person without consent by endangering or threatening his life with a firearm or other deadly weapon with the taker knowing that he is not entitled to the property and intending to permanently deprive the owner of the property. *State v. May*, 292 N.C. 644, 649, 235 S.E.2d 178, 182, *cert. denied*, 434 U.S. 928, 54 L. Ed. 2d 288 (1977). The evidence is considered in the light most favorable to the State, and the State is entitled to every reasonable inference to be drawn from the evidence. *State v. Powell*, 299 N.C. 95, 99, 261 S.E.2d 114, 117 (1980).

At trial, the evidence showed that defendant, who had access to the victim's home, and victim had an argument about the purchasing of a vehicle for defendant by the victim on the morning of 12 August 1998. Loud noises described as "boom, boom, boom" were heard from the victim's residence late that night. Defendant approached police officers after wrecking the victim's vehicle. Soon after, the victim was found dead in her home, shot five times, including once in the head. Defendant was shown to have the murder weapon in his possession.

Defendant relies on the *Powell* case, which at first glance appears to have similar facts. *Id.* at 95, 261 S.E.2d at 114. In that case, the Supreme Court held that there was no evidence and no reasonable inference to be taken therefrom that the defendant took the objects from the victim by force while she was alive. *Id.* at 102, 261 S.E.2d at 119. The defendant raped the victim, killed her, and then took possessions of the victim, including her automobile. The felony murder theory was employed in that case based upon rape and robbery with a dangerous weapon. *Powell* stressed that the "gist" of the offense of robbery with a dangerous weapon was the "taking by force" rather than merely the taking. *Id.* Even though the defendant had with him the victim's automobile after the crime, this only raised an inference that he stole the vehicle, and not to the element that he took the vehicle by force. *Id.* Thus, the Supreme Court held that, while construing

the evidence in a light most favorable to the State, the evidence indicated "only that the defendant took the objects as an afterthought once the victim had died." *Id.*

We hold that the State introduced sufficient evidence to give a reasonable inference that defendant killed the victim to take the vehicle. Unlike the *Powell* case, the taking of the vehicle in the case *sub judice* does not appear to be an afterthought. The two had argued about the purchasing of a vehicle for defendant 24 hours prior to the murder.

Viewed in a light most favorable to the State, the inference can be drawn that defendant was not going to get a vehicle of his own, and thus killed his mother to take her vehicle. It is irrelevant that defendant stole the car after killing the victim. A homicide victim is still a "person," within the meaning of a robbery statute, when the interval between the fatal blow and the taking of property is short. *State v. Pakulski*, 319 N.C. 562, 572, 356 S.E.2d 319, 325 (1987). He then wrecked the vehicle soon after the crime.

Thus, it was proper for the trial court to instruct the jury on first-degree murder under the felony murder theory. This assignment of error is overruled.

V.

[5] Defendant assigns error to the trial court's submitting of the instruction on the doctrine of recent possession to the jury.

> The doctrine of recent possession allows the jury to infer that the possessor of certain stolen property is guilty of larceny.

> For this doctrine to apply, the state must prove three things beyond a reasonable doubt. First that the property was stolen; second, that the defendant had possession of this same property. Now, a person has possession when he is aware of its presence and has, either by himself or together with others, both the power and intent to control its disposition or use. Third, that the defendant had possession of this property so soon after it was stolen and under such circumstances as to make it unlikely that he obtained possession honestly.

*State v. Pickard*, 143 N.C. App. 485, 487-88, 547 S.E.2d 102, 104 (quoting *State v. Barnes*, 345 N.C. 184, 240, 481 S.E.2d 44, 75, *cert. denied*, 522 U.S. 876, 139 L. Ed. 2d 134 (1997), *cert. denied*, 523

U.S. 1024, 140 L. Ed. 2d 473 (1998)), *disc. review denied,* 354 N.C. 73, 553 S.E.2d 210 (2001).

Defendant contends that the giving of this instruction was improper because it assumed facts of which the State did not present evidence, namely that defendant stole the car, and amounted to a definitive indication of such by the trial court.

On this point, the State reiterates the evidence and the inferences therefrom that were espoused in section IV. We do not believe that the instruction was wrongfully given by the trial court or that it indicated to the jury that defendant had stolen the car. The evidence showed that defendant wanted a car, argued with the victim about purchasing one for him, killed the victim, and drove off with her car before wrecking it. The evidence was sufficient for the submission of the instruction on the doctrine of recent possession. This assignment of error is overruled.

We have reviewed the remainder of defendant's arguments and find them wholly without merit.

No error.

Judges TYSON and BRYANT concur.