STATE OF NORTH CAROLINA v. EDWIN PHILLIPS

No. COA01-656

(Filed 2 July 2002)

**1. Search and Seizure— warrantless search—plain view doctrine**

The trial court did not err in a first-degree murder case by allowing the admission of evidence seized by law enforcement officers during their warrantless search of the residence where decedent wife remained with her three daughters after the couple separated, because: (1) the only evidence seized was evidence observed in plain view during the police officers' protective sweep of the house after the discovery of decedent's body in the doorway of the residence; (2) the officers secured the residence by covering the door and roping off the area with yellow tape; (3) the subsequent entry by a detective and a lab technician did not constitute a separate search; and (4) the search and seizure was not unreasonable under the circumstances.

**2. Homicide— first-degree murder—short-form indictment— constitutionality**

The short-form indictment used to charge defendant with first-degree murder did not violate defendant's Fourth Amendment Due Process rights even though it failed to allege any aggravating circumstances.

Appeal by defendant from judgment entered 2 September 2000 by Judge Howard R. Greeson, Jr. in Guilford County Superior Court. Heard in the Court of Appeals 27 March 2002.

*Attorney General Roy Cooper, by Special Deputy Attorney General H. Alan Pell, for the State.*

*Wyatt, Early, Harris & Wheeler, L.L.P., by John Bryson, for defendant.*

BIGGS, Judge.

Edwin Phillips (defendant) appeals his conviction of first-degree murder. For the reasons herein, we find no error.

The evidence tended to show the following: that defendant and Sharon Little Phillips (Phillips) were married and lived together

at 1706 Waverly Street, until 6 June 1999, when defendant moved out. Phillips, however, remained in the residence with her three daughters.

On 28 August 1999, at 11:48 p.m., a dispatcher with the High Point Police Department received a 911 call from the 1706 Waverly Street residence. She could hear screaming in the background and a male voice saying "stop it" or "drop it". While the first dispatcher was taking the call, a second dispatcher received a call from "Waverly", from a neighbor of Phillips indicating that Phillips had been stabbed, the victim's daughter was with the caller, and the caller had seen the victim's husband running down the street.

Officers Calvin Carter and Christopher Cole responded to the residence, arriving at approximately 11:54 p.m., to discover Phillips' body lying in the doorway. Phillips, who was unresponsive and lying on her back, had a laceration on the left side of her face, her shoulder and her throat had been cut. With Officer Cole in the lead and Officer Carter as the cover, the officers entered the house with their guns drawn and conducted a protective sweep. They observed blood on the carpet, a trail of blood leading toward the hallway and a large amount of blood in the back bedroom. Neither officer removed any of the evidence they observed. The sweep took approximately two minutes. When Officers Cole and Carter returned to the living room, they observed emergency personnel around the victim administering aid, but Phillips was pronounced dead at 12:03 a.m. To secure the crime scene, the police officers placed yellow tape around the residence, and covered the door so no one could "see in or get in".

Jane Aswell, a technician from the High Point crime lab, arrived between 12:20 a.m. and 12:31 a.m. to process the scene. Her job was to photograph and videotape the scene and to collect evidence. Within five minutes of Aswell's arrival, the officers, including Aswell, walked through the house. During their walk-through, the officers pointed at evidence they had observed during their initial sweep. Aswell made a fifteen minute videotape of the interior of the residence. While she was videotaping, Aswell was in the house alone. After she finished the videotape, however, Aswell went back into the house with Officer Cole and made 35 mm photographs of the evidence Officer Cole and Officer Carter observed during their initial sweep. In addition, the officers found identifying paper work on the dresser.

STATE v. PHILLIPS

[151 N.C. App. 185 (2002)]

Lead Detective Michael Bye, of the High Point Police Department, arrived at the scene at approximately 1:01 a.m. He, along with Officers Cole, Carter and Aswell, again entered the house following a trail of blood which led to a back bedroom where a large amount of blood was observed on the bed. During their walk through, the officers pointed to the areas they observed during their initial sweep. At this time, Detective Bye instructed the lab technician to collect blood samples from the carpet, the walls, the bed and the bedspread.

Earlier that morning, shortly after midnight, a police officer had received information that defendant was at the High Point Hospital emergency room receiving medical treatment for injuries to his neck, leg and finger. The officer arrived at the emergency room at approximately 12:40 a.m. and talked to the defendant about the incident that had occurred at 1706 Waverly Street. The police officer at no time obtained defendant's consent to search the house. Following their investigation, defendant was charged with and convicted of first-degree murder in violation N.C.G.S. § 14-17. From his conviction, defendant appeals.

I.

[1] Defendant contends first, that the trial court erred in allowing the admission of evidence seized by the law enforcement officers during their warrantless search of 1706 Waverly Street. We disagree.

In response to this assignment, the State argues that defendant lacked standing to challenge the search of the residence. Upon review of the record, we conclude that the State has waived its right to contest standing by expressly abandoning it during the suppression hearing below.

At the hearing, the State made the following statement:

[T]he State at this time, in open court, abandons its standing argument in light of the defendant's apparent, to whatever extent he had some ownership interest in the house, . . . so we abandon that position.

The United States Supreme Court in *Steagald v. United States*, 451 U.S. 204, 68 L. Ed. 2d 38 (1981), has held that the State may lose its right to raise the issue of standing on appeal when it has made contrary assertions in the court below, when it has acquiesced in contrary findings by the trial court, or when it has failed to raise such

questions in a timely fashion during the litigation. *See also, State v. Cooke*, 54 N.C. App. 33, 41, 282 S.E.2d 800, 806 (1981) (Held that "[i]f the State does not properly raise and preserve issues, it waives them.").

In the present case, though the State did raise the issue of standing below, following argument, the State opted to expressly waive it. Based on this waiver, the trial court made no findings or conclusions on the issue and proceeded to the merits of the motion to suppress. We therefore, conclude that the State has precluded appellate review of this issue and likewise move forward to examine the merits of defendant's arguments on the motion to suppress.

In his motion, defendant does not contest the initial entry by Officers Carter and Cole upon their arrival on the scene. He concedes that the officers upon the discovery of Phillips' body were permitted to do a protective sweep to discern whether there were other victims or suspects on the premises. Defendant, however, contends that the subsequent entry into the house by the lab technician and Detective Bye for the purpose of gathering evidence was in violation of his constitutional rights.

When a defendant in a criminal prosecution makes a motion to suppress evidence obtained by means of a warrantless search, the State has the burden of showing, at the suppression hearing, "how the [warrantless search] was exempted from the general constitutional demand for a warrant." *State v. Cooke*, 306 N.C. 132, 135, 291 S.E.2d 618, 620 (1982). In reviewing a trial court's ruling on a motion to suppress, the trial court's findings of fact " 'are conclusive on appeal if supported by competent evidence, even if the evidence is conflicting.' " *State v. Buchanan*, 353 N.C. 332, 336, 543 S.E.2d 823, 826 (2001) (quoting *State v. Brewington*, 352 N.C. 489, 498, 532 S.E.2d 496, 501 (2000), *cert. denied*, 531 U.S. 1165, 148 L. Ed. 2d 992 (2001)) (citation omitted).

In the case *sub judice*, the trial court, following the suppression hearing, made the following pertinent findings:

. . . .

4. The officers found a black female lying on the floor just inside the front door of 1706 Waverly Drive and observed blood around the front door area.

5. They entered the residence to check on the victim and proceeded to conduct a protective search of the premises looking for any suspects, other victims or weapons.

6. They observed a lot of blood around the victim, blood down the hallway and in one of the bedrooms.

. . . .

8. After the officers completed their search, they secured the crime scene with evidence tape and controlled access to it. Neither of these initial officers seized any evidence that they had observed in plain view during their protective search. In fact, they seized no evidence at all.

9. Jane [Aswell], a lab technician with the High Point Police Department Crime Lab, arrived around 12:20 a.m.

. . . .

11. Officers Cole and Carter were still present upon Mrs. [Aswell]'s arrival waiting outside the residence; the High Point Police Department had maintained continuous control of the premises from the time of their initial arrival and search.

12. High Point Police detective Mike Bye arrived on the scene at 1:01 a.m. He discussed the situation with Jane [Aswell] and asked her to process the scene. They entered the residence at approximately 1:20 a.m. At the time they entered, the front storm door of the residence had been covered.

13. When Detective Bye and Mrs. [Aswell] entered the residence, the victim's body was still in the front door area.

14. Mrs. [Aswell] began by videotaping the outside and inside of 1706 Waverly Drive.

15. She next made 35mm photos of the crime scene including the interior. She photographed the scene and items of evidence there before anything was seized.

16. Detective Bye had her make photographs of the victim's body illustrating its location and injuries.

17. She also made photographs of the blood around the front door and down the hallway into a bedroom.

18. Both the videotape and still photos were of items in plain view.

19. At no time were drawers opened or any containers opened and searched. All things that were observed and seized (including photographs) were in plain view. These were the items were [sic] initially observed by Officers Cole and Carter during their emergency search.

20. Mrs. [Aswell] then began to collect items of evidence that were observed in plain view. In addition to the photographic evidence, Mrs. [Aswell] collected the following:

a. A note written on a white piece of paper that was attached to a bedroom door and in plain view.

b. Several blood samples from the interior of the residence that were all in plain view.

Defendant argues specifically, that there is no evidence to support the trial court's Finding of Fact number nine in that the lab technician did not arrive around 12:20 a.m. Rather, he argues that the evidence supports a finding that she actually arrived at 12:31 a.m. Although there was testimony at trial that Aswell arrived at the crime scene at 12:31 a.m., the testimony of Officer Bye at the Suppression hearing was that Aswell arrived at 12:19 a.m. We conclude that the trial court's Finding of Fact number nine is supported by competent evidence in the record even though there is evidence in the record to support a contrary finding. Accordingly, we are bound by the trial court's Finding of Fact number nine.

In addition, though defendant in his Assignment of Error number three states generally that the findings of fact are not supported by the evidence, this broad challenge is not sufficient to preserve appellate review of all the court's findings. *Lumsden v. Lawing*, 107 N.C. App. 493, 499, 421 S.E.2d 594, 597-98 (1992) (quoting, *Wade v. Wade*, 72 N.C. App. 372, 375-76, 325 S.E.2d 260, 266, *disc. review denied*, 313 N.C. 612, 330 S.E.2d 616 (1985)) (" '[a] single assignment generally challenging the sufficiency of the evidence to support numerous findings of fact, as here, is broadside and ineffective.' "). Nor does defendant specifically argue in his brief that any other finding except number nine is unsupported by the evidence. " 'Where no exceptions have been taken to the findings of fact, such findings are presumed to be supported by competent evidence and are binding on appeal.' " *State v. Pendleton*, 339 N.C. 379, 451 S.E.2d 274 (1994), (quoting *Schloss v.*

*Jamison*, 258 N.C. 271, 275, 128 S.E.2d 590, 593 (1962)), *cert. denied*, 515 U.S. 1121, 132 L. Ed. 2d 280 1995. We therefore, conclude that this Court is bound by the findings of the trial court. *Id.*; *accord State v. Perry*, 316 N.C. 87, 340 S.E.2d 450 (1986).

We turn next to whether these findings support the trial court's conclusion that:

9. . . . Mrs. [Aswell]'s and Detective Bye's entry into the residence did not constitute a separate search within the purview of the Fourth Amendment but instead constituted, at most, a "second look". The plain view doctrine, therefore, controls the present case and the search and seizure that occurred was not unreasonable and did not violate the Defendant's Fourth Amendment rights.

Defendant contends that the trial court, in concluding that the search and seizure were not in violation of the Fourth Amendment, misapplied both the doctrines of "second look" and "plain view".

The Fourth Amendment grants individuals the right to be secure against unreasonable searches and seizures. *Mincey v. Arizona*, 437 U.S. 385, 57 L. Ed. 2d 290 (1978). Generally, a warrant supported by probable cause is required before a search is considered reasonable. *State v. Woods*, 136 N.C. App. 386, 524 S.E.2d 363, *disc. review denied*, 351 N.C. 370, 543 S.E.2d 147 (2000). The warrant requirement "is a principal protection against unreasonable intrusions into private dwellings." *Woods*, 136 N.C. App. at 390, 524 S.E.2d at 365. This requirement is "subject only to a few specifically established and well delineated exceptions." *Id.*

One exception is the exigent circumstances exception. *Woods*, 136 N.C. App. at 390, 524 S.E.2d at 366. This exception may apply where law enforcement officers are responding to an emergency, and where there is a compelling need for official action and no time to secure a warrant. *U.S. v. Moss*, 963 F.2d 673 (4th Circuit 1992); *see also*, *Woods*, 136 N.C. App. at 391, 524 S.E.2d at 366. Where, for example, officers believe that persons are on the premises in need of immediate aid, or where there is a need " 'to protect or preserve life or avoid serious injury' ", the Supreme Court has held that a warrantless search does not violate the Fourth Amendment. *Mincey*, 437 U.S. at 392, 57 L. Ed. 2d at 300 (quoting *Wayne v. United States*, 115 U.S. App. D.C. 234, 241, 318 F.2d 205, 212 (1963)). To justify a warrantless entry of a residence, "there must be probable cause and exigent cir-

cumstances which would warrant an exception to the warrant requirement." *State v. Wallace*, 111 N.C. App. 581, 586, 433 S.E.2d 238, 241, *disc. review denied*, 335 N.C. 242, 439 S.E.2d 161 (1993). The burden generally rests on the State to prove the existence of exigent circumstances. *Chimel v. California*, 395 U.S. 752, 23 L. Ed. 2d 685 (1969).

Moreover, it is well settled that where the officers' search is conducted during the course of "legitimate emergency activities", they may seize evidence of a crime that is "in plain view". The U.S. Supreme Court in *Mincey*, 437 U.S. at 392-93, 57 L. Ed. 2d at 300, stated:

> We do not question the right of police to respond to emergency situations. . . . [T]he Fourth Amendment does not bar police officers from making warrantless entries and searches when they reasonably believe that a person within is in need of immediate aid. Similarly, when the police come upon the scene of a homicide they may make a prompt warrantless search of the area to see if there are other victims or if a killer is still on the premises. . . . And the police may seize any evidence that is in plain view during the course of their legitimate emergency activities.

(citations omitted).

In addition, our Supreme Court in *State v. Jolley*, 312 N.C. 296, 321 S.E.2d 883 (1984), has held that

> when a law enforcement officer enters private premises in response to a call for help and thereby comes upon what reasonably appears to be the scene of a crime, and secures the crime scene from persons other than law enforcement officers by appropriate means, all property within the crime scene in plain view which the officer has probable cause to associate with criminal activity is thereby lawfully seized within the meaning of the fourth amendment. Officers arriving at the crime scene thereafter and while it is still secured can examine and remove property in plain view without a search warrant.

*Jolley*, 312 N.C. at 300-01, 321 S.E.2d at 886.

We find *Jolley* controlling in the instant case. The facts in *Jolley* are as follows: the defendant immediately called the operator and asked for help following the shooting death of her husband at their

home with a .22 semi-automatic rifle. Members of the rescue squad first responded to the home, followed by a deputy from the sheriff's department who was the first law enforcement officer to arrive at the crime scene. Upon entry into the house, the deputy observed the victim's body in the den-kitchen area of the house, a .22 semi-automatic rifle, and defendant kneeling in the kitchen sobbing. The deputy walked the defendant outside of the house and escorted her to his patrol vehicle where she sat in the front seat. After the emergency personnel left with the victim, the deputy "secured a rope and crime scene poster . . . and roped off the residence. . . ." *Id.* at 297, 321 S.E.2d at 884. Fifteen minutes later, a detective arrived, went into the house and stayed for six hours, after which time he took the rifle and the cartridges, which the deputy had earlier observed in plain view, to the county jail. The Court of Appeals held that the detectives had conducted a warrantless search that was not justified by the exigent circumstances exception. The Supreme Court reversed stating that this Court erred in failing to focus upon the issue: At what point was the rifle in question seized within the meaning of the Fourth Amendment? The Supreme Court reasoned that by roping off the residence and posting signs, the deputy lawfully seized the rifle; and further, "[b]ecause the rifle was lawfully seized, it was properly admitted into evidence." *Id.* at 303, 321 S.E.2d at 888. The Court further ruled that the detective, who later arrived at the scene as a result of defendant's call for help, "had every right to enter the area secured by [the deputy]" and "[o]nce lawfully inside . . . he then properly [removed] the rifle which was in plain view and which had been seized by the securing of the crime scene." *Id.*

In the case *sub judice*, it is uncontested that Officers Cole and Carter lawfully entered the residence at 1706 Waverly Drive in response to a call for help. When the officers entered the house, they observed the victim's body and, upon conducting a protective sweep, observed varying amounts of blood throughout the house including the wall, the hallway, the carpet and a large amount of blood in the back bedroom on the bedspread. Thereupon, the officers secured the residence by covering the door and roping off the residence with yellow tape. The lab technician arrived approximately thirty minutes after the original entry by Officers Cole and Carter. Approximately thirty minutes after the arrival of the lab technician, Detective Bye arrived at the scene. According to the trial court's findings, the lab technician and Detective Bye entered the residence at which time a videotape and photographs were taken of the interior of the house. In addition, blood and evidence was seized. The trial court further found

that all of the evidence seized was in plain view and the entry by Detective Bye did not constitute a new search. We conclude that Detective Bye had been called to the scene, just as the detectives in *Jolley*. He had every right to enter the area secured by Officers Cole and Carter and remove evidence observed in plain view, which had been seized by the securing of the crime scene. *State v. Mickey*, 347 N.C. 508, 516, 495 S.E.2d 669, 674 ("[A] seizure is lawful under the plain view exception when the officer was in a place where he had the right to be when the evidence was discovered. . . ."), *cert. denied*, 525 U.S. 853, 142 L. Ed. 2d 106 (1998).

Moreover, we reject defendant's argument that the facts of this case are virtually identical to the those in *Thompson v. Louisiana*, 469 U.S. 17, 83 L. Ed. 2d 246 (1984). The critical distinction is that, in *Thompson*, the evidence at issue was not *discovered* in plain view and was not discovered during the victim or suspect search. In *Thompson*, the defendant sought to suppress evidence discovered during a "general exploratory search" which included a pistol found inside a chest of drawers, a torn up note found in a wastepaper basket and another letter found folded up inside an envelope. *Id.* at 19, 83 L. Ed. 2d 249. In the present case, the trial court found that the only evidence seized was evidence observed in plain view during the police officers' protective sweep of the house. At no time during the search did the officers open drawers or closed containers.

Nor do we find this inconsistent with *Mincey v. Arizona*. Like *Thompson*, and unlike the present case, the officers in *Mincey* conducted an exhaustive search. They opened drawers, closets and cupboards, emptied clothing pockets and pulled up sections of the carpet. They did not, as in the case before us, confine their search and seizure to items discovered in plain view during the emergency search.

We hold that the trial court's findings support the court's conclusion that the subsequent entry by Detective Bye did not constitute a separate search. We further hold that the search and seizure were not unreasonable under the circumstances and that such conclusion is consistent with the law. We decline to examine the "second look" doctrine relied on by the trial court in that we do not find it dispositive of the issues presented here. Accordingly, we overrule this assignment of error.

II.

[2] Defendant next argues that the short-form murder indictment violated his constitutional rights in that it failed to allege aggravating circumstances. He concedes that the indictment complies with N.C.G.S. § 15-144 (2001). He further concedes that this Court is bound by our Supreme Court decisions rejecting constitutional challenge to N.C.G.S. § 15-144 and the short form indictment. Rather, defendant argues that our Supreme Court's position is erroneous and should be disregarded. We disagree and find defendant's argument without merit.

N.C.G.S. § 15-144 reads in pertinent part,

[i]n indictments for murder . . ., it is sufficient in describing murder to allege that the accused person feloniously, willfully, and of his malice aforethought, did kill and murder (naming the person killed), . . . and any bill of indictment containing the averments and allegations herein named shall be good and sufficient in law as an indictment for murder or manslaughter. . . .

In the case *sub judice*, the indictment against defendant for murder contained the following language:

The jurors for the State upon their oath present that on or about the [28 August 1999] and in [Guilford County] the defendant . . . unlawfully, willfully and feloniously and of malice forethought kill and murder Sharon Little Phillips.

We conclude that this indictment herein complies with the requirements of N.C.G.S. § 15-144, for a short-form murder indictment. N.C.G.S. § 15-144. An indictment that complies with these statutory requirements will support a conviction of both first-degree and second-degree murder. *See State v. King*, 311 N.C. 603, 320 S.E.2d 1 (1984). Furthermore, our Supreme Court has previously held that a short-form indictment complying with N.C.G.S. § 15-144 satisfies the North Carolina Constitution. *See, e.g. State v. Avery*, 315 N.C. 1, 337 S.E.2d 786 (1985).

Defendant relies on *Jones v. United States*, 526 U.S. 227, 143 L. Ed.2d 311 (1999) for the proposition that "any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt." *Id.* at 243 n.6, 143 L. Ed. 2d at 326. The U.S. Supreme Court in *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d

435 (2000), reaffirmed this proposition by applying it to state criminal proceedings. Here, defendant argues that the short-form murder indictment is not sufficient to charge capital first-degree murder under the rule set forth in *Jones* and *Apprendi*. We disagree.

Our Supreme Court in *State v. Braxton*, 352 N.C. 158, 531 S.E.2d 428 (2000), *cert. denied*, 531 U.S. 1130, 148 L. Ed. 2d 797 (2001), reviewed a short-form murder indictment in light of *Apprendi* and held that the short-form indictment is sufficient to allege first-degree murder under the United States Constitution:

> The crime of first-degree murder and the accompanying maximum penalty of death, as set forth in N.C.G.S. § 14-17 and North Carolina's capital sentencing statute, are encompassed within the language of the short-form indictment. We, therefore, conclude that premeditation and deliberation need not be separately alleged in the short-form indictment. Further, the punishment to which defendant was sentenced, namely, the death penalty, is the prescribed statutory maximum punishment for first-degree murder in North Carolina. Thus, no additional facts needed to be charged in the indictment. Given the foregoing, defendant had notice that he was charged with first-degree murder and that the maximum penalty to which he could be subjected was death.

*Id.* at 175, 531 S.E.2d at 437-38.

We conclude that defendant's argument that the short-form murder indictment violates his Fourteenth Amendment Due Process rights is without merit. Thus, the trial court did not err in denying defendant's motion to dismiss the indictment. Accordingly, this assignment of error is overruled.

We hold, for the reasons stated herein, that defendant received a trial free of any error.

No error.

Judges WYNN and McCULLOUGH concur.