STEELMAN, Judge.
 

 The Union County grand jury indicted defendant on a charge of larceny from the person on 15 January 2002. At trial, the State introduced evidence tending to show the following: Officer Davey Plyler received a call at approximately 8:10 p.m. on 15 January 2002 that a black male in a striped shirt had taken a lady's purse and was running towards the police department. Officer Plyler was less than a block and a half from the location at the time. As Officer Plyler was responding to the call, Officer Pressley informed him by radio that he had dealt with someone named Jimmy Garlins earlier that day who fit the description of wearing a bluetoboggan. As Officer Plyler drove around the immediate area of the reported offense looking for the perpetrator, he observed a black male in a striped shirt walking up Main Street. Officer Plyler stopped in front of Efird Monuments and spoke with the individual, whom he identified as defendant. Defendant agreed to accompany Officer Plyler back to the church parking lot where the offense had occurred and got into the officer's vehicle.
 

 Upon arriving at the parking lot, Officer Plyler spoke with the victim, Judith Griffin. Officer Plyler switched on his vehicle's interior dome light and asked the victim if she could identify defendant as the perpetrator. Defendant remained in Officer Plyler's vehicle while the victim looked at him. Officer Plyler testified the victim told him the defendant "looked like him but she wasn't sure because he didn't have on a toboggan while he was sitting in my patrol car." After Officer Plyler obtained identification information from defendant, defendant volunteered that "the only money that he had on him was the change he had in his pocket" and pulled two quarters out of his pocket. Officer Plyler then drove defendant to a location about a block away and released him.
 

 The victim described the perpetrator as a young black man who was wearing a toboggan and a striped shirt or jacket. The perpetrator was talking on a cell phone as he approached the victim. He indicated that she should go in front of him, and she walked into the church parking lot. When she got to the back of her car, he snatched her purse. The victim testified that she had$5.50 in her purse in two zippered compartments. The only change in her purse was two quarters which the victim kept for making telephone calls. When her purse was recovered later that evening, only the two quarters were missing.
 

 When the State offered the testimony of Officer Perry Caskey concerning the use of a police canine (Dolf) to track the perpetrator, defendant objected. Following
 
 voir dire,
 
 the trial court made extensive findings of fact as to Officer Caskey's training in handling canines and as to Dolf's characteristics and training in tracking individuals. The trial court found
 
 inter alia
 
 that Dolf "is a dog that is used for tracking," and he "has demonstated an ability to differentiate between human scent through his training in what is called cross tracking, . . . and the dog has been successful differentiating the different tracks of the two people involved" in testing. Dolf "has had twenty successful trackings . . . since being certified, and more than twenty-five in his original training." The dog has been successfully tested tracking scent that is two hours old. Dolf was put on the trail where the victim indicated that "she had last seen the individual who took her purse." The trial court found Dolf "tracked hard" and did not lose the track from the grassy area until its end on "Main Street, Monroe, in front of Efird's Monument and started circling or spinning." This was the place where the defendant got into Officer Plyler's car. The trial court concluded that Dolf:
 

 is of a stock characterized by acuteness of scene [sic] and power of discrimination. That the dog was accustomed to and trained in pursuit of the human track. That the dog hasbeen found by experience to be reliable in such pursuit.
 

 In this case the dog was put on the trail of the defendant. The trail was followed under circumstances that offer substantial assurance or permit a reasonable inference of implication.
 

 It is, therefore, ordered that the defendant's objection to the evidence of tracking by Dolf, the Belgium Malinois, is overruled, and the evidence is competent in the trial of this case.
 

 Officer Caskey then testified before the jury as to his training and also as to Dolf's training. At the parking lot, Officer Caskey asked the victim to point out the last place which she saw the perpetrator go, and she indicated a grassy area beside the church. The victim advised Officer Caskey that no one had been through the grassy area since the perpetrator ran through it.
 

 Officer Caskey went to the grassy area and told Dolf to pick up the track. Dolf then "hunkered down, kept his nose down, his tail curled up" and pulled hard on his leash, which Officer Caskey described as behavior consistent with how Dolf acted while following a track. Officer Caskey stated Dolf "tracked real hard," and he described the route taken by Dolf from the grassy area to Main Street. Dolf began spinning around Officer Caskey when they were in front of Efird's Monuments on Main Street. Officer Caskey described Dolf's spinning behavior as consistent with when a track has ended because the person being tracked had gotten into a car.
 

 Officer Plyler discovered a purse, a blue toboggan, and a small cell phone about fifteen feet off of the track followed by Dolf. The victim identified the purse and its contents asbelonging to her. Officer Pressley testified the blue toboggan was the same one which he had seen defendant wearing earlier that day.
 

 Defendant made a motion to dismiss the charge at the close of the State's evidence, which the trial court denied. Defendant presented no evidence and renewed his motion to dismiss. The trial court again denied the motion and submitted the case to the jury. The jury found defendant guilty of larceny from the person. The trial court sentenced defendant to an active term of fifteen to eighteen months imprisonment. Defendant appeals.
 

 In his first argument, defendant contends the trial court erred by admitting testimony concerning the tracking done by Dolf. He argues the evidence does not support the trial court's conclusions that Dolf was by experience reliable as a tracking dog, and that the tracking in the instant case permits a reasonable inference of identification of the defendant. In order for evidence obtained through the use of a tracking dog to be admitted at trial, the State must show that the tracking dog (1) has been accustomed and trained to pursue the human track; (2) has been found by experience reliable in such pursuit; and (3) that it was put on the trail of the guilty party, which was pursued and followed under such circumstances and in such way as to afford substantial assurance, or permit a reasonable inference, of identification.
 
 State v. McLeod,
 

 196 N.C. 542
 
 , 545,
 
 146 S.E. 409
 
 , 411 (1929), and
 
 State v. Green,
 

 76 N.C. App. 642
 
 , 645,
 
 334 S.E.2d 263
 
 , 265, (1985),
 
 disc. review denied,
 

 315 N.C. 187
 
 ,
 
 340 S.E.2d 751
 
 (1985). Defendant contests the sufficiency of State's evidence tosupport the second and third prongs of the
 
 McLeod/Green
 
 test. In his supporting assignment of error, however, defendant simply complains "that the court's findings of fact are not supported by the evidence and the court's conclusions of law are not sufficiently supported by the findings of fact and this ruling was otherwise contrary to law."
 

 Defendant's assignment "like a hoopskirt - covers everything and touches nothing."
 
 State v. Kirby,
 

 276 N.C. 123
 
 , 131,
 
 171 S.E. 2d 416
 
 , 422 (1970). Because his assignment of error generally asserts that the evidence does not support the trial court's findings of fact, "this broad challenge is not sufficient to preserve appellate review of all the court's findings."
 
 State v. Phillips,
 

 151 N.C. App. 185
 
 , 190,
 
 565 S.E.2d 697
 
 , 701 (2002)(citations omitted). As a result, it is presumed that competent evidence supports those findings and those findings are binding on appeal.
 

 Id.
 

 The findings of fact support the trial court's conclusions of law, and the trial court did not err in admitting the tracking evidence. This assignment of error is without merit.
 

 Defendant next contends the evidence was insufficient to identify him as the perpetrator. He argues the trial court erred by denying his motions to dismiss at the close of the State's evidence and at the close of all evidence. We disagree.
 

 When ruling on a defendant's motion to dismiss, the trial court must consider the evidence in the light most favorable to the State, and the State is entitled to every reasonable inferencewhich can be drawn from the evidence presented.
 
 State v. Davis,
 

 325 N.C. 693
 
 , 696,
 
 386 S.E.2d 187
 
 , 189 (1989)(citations omitted). "If there is substantial evidence - whether direct, circumstantial, or both - to support a finding that the offense charged has been committed and that defendant committed it, a case for the jury is made and nonsuit should be denied."
 
 State v. McKinney,
 

 288 N.C. 113
 
 , 117,
 
 215 S.E.2d 578
 
 , 582 (1975)(citation omitted).
 

 When viewed in the light most favorable to the State, the evidence tended to show the following: The victim described the perpetrator as a young black man who was carrying a cell phone. The perpetrator was wearing a toboggan and a striped shirt or jacket. Within five minutes of the report of the offense, Officer Plyler located a black male wearing a striped shirt in front of Efird's Monument on Main Street. The male, later identified as defendant, got into Officer Plyler's vehicle and accompanied him back to the scene of the offense. The victim stated defendant looked like the perpetrator, but she was not sure. Before his release by Officer Plyler, defendant voluntarily displayed the contents of his pocket, which were two quarters. The victim informed Officer Caskey that the perpetrator was the last person to pass through a grassy area next to the church. Officer Caskey began in the grassy area and used Dolf to follow the perpetrator's track. The track ended at the location where defendant had gotten into Officer Plyler's vehicle. Fifteen feet off of the track followed by Dolf, police found a cell phone, a toboggan and the victim's purse, which was only missing two quarters. This evidence, though circumstantial, is sufficient to survive defendant's motions (to dismiss at the close of State's evidence and the close of all evidence). "Circumstantial evidence may withstand a motion to dismiss and support a conviction even when the evidence does not rule out every hypothesis of innocence."
 
 State v. Stone,
 

 323 N.C. 447
 
 , 452,
 
 373 S.E.2d 430
 
 , 433 (1988)(citation omitted). "The test for sufficiency of the evidence is the same whether the evidence is direct or circumstantial or both."
 
 State v. Fritsch,
 

 351 N.C. 373
 
 , 379,
 
 526 S.E.2d 451
 
 , 455 (2000)(
 
 citing State v. Barnes,
 

 334 N.C. 67
 
 , 75,
 
 430 S.E.2d 913
 
 , 918 (1993). "If the evidence presented is circumstantial, 'the question for the court is whether a reasonable inference of defendant's guilt may be drawn from the circumstances. If so, it is for the jury to decide....'"
 
 State v. Thomas,
 

 296 N.C. 236
 
 , 244,
 
 250 S.E.2d 204
 
 , 209 (1978)(citation omitted). State's evidence was sufficient to submit this issue to the jury, thus the denial of defendant's motions was not error. This assignment of error is without merit.
 

 Defendant failed to set out his nine remaining assignments of error in his brief. Because he has neither cited any authority nor stated any reason or argument in support of those assignments of error, they are deemed abandoned. N.C.R. App. P. 28(b)(6).
 

 NO ERROR.
 

 Judges HUDSON and THORNBURG concur.
 

 Report per Rule 30(e).