An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-732

Filed 20 August 2025

Stokes County, Nos. 97CRS004409-840, 97CRS004410-840, 97CRS004411-840

STATE OF NORTH CAROLINA

v.

WILLIAM SHAUN WALKER, Defendant.

Appeal by defendant from order entered 20 November 2023 by Judge R. Stuart Albright in Stokes County Superior Court. Heard in the Court of Appeals 10 April 2025.

> *Attorney General Jeff Jackson, by Assistant Attorney General Heidi M. Williams, for the State-appellee.*

> *Appellate Defender Glenn Gerding, by Assistant Appellate Defender David W. Andrews, for defendant-appellant.*

GORE, Judge.

Defendant appeals the sentencing order entered after the resentencing hearing pursuant to "*Miller v. Alabama* and its progeny." 567 U.S. 460 (2012). Defendant raises multiple issues alleging violations of the Eighth Amendment applied to the states through the Fourteenth Amendment; of Article I, § 27 of the North Carolina

Constitution; and of N.C.G.S. § 15A-1340.19B. Upon review of the briefs, the record, and the trial court's findings and conclusions of law, we affirm.

**I.**

In 1997, defendant was indicted on two counts of first-degree murder, one count of armed robbery, one count of felony larceny, one count of felony breaking and entering, and one count of possession of stolen goods. In 1998, the jury found defendant guilty of the counts for first-degree murder, armed robbery, felony larceny, and felony breaking and entering. The trial court dismissed the possession of stolen goods offense, and arrested judgment for the larceny and breaking and entering felonies. The jury could not agree during the sentencing phase; the trial court ultimately imposed two consecutive life without parole sentences ("LWOP") for the murder convictions and an additional consecutive sentence for armed robbery. Defendant's convictions were affirmed on appeal. This Court previously addressed the underlying facts of this case when defendant originally appealed his convictions. *See State v. Walker*, 2000 N.C. App. LEXIS 42 (2000) (unpublished), *cert. denied*, 2008 N.C. LEXIS 376 (2008).

In 2012, the Supreme Court of the United States decided *Miller*. It held that a mandatory LWOP sentence for juveniles, those under the age of 18 at the time of the crime, is a violation of the Eighth Amendment. 567 U.S. at 470–71. Our General Assembly codified statutes to address the *Miller* holding for juveniles "convicted of first-degree murder." N.C.G.S. §§ 15A-1340.19A–.19D (2012). Defendant filed a

Motion for Appropriate Relief in April 2013. The resentencing hearing occurred in October 2023. Defendant presented mitigating evidence through multiple testimonies, and hundreds of pages of exhibits with psychologist and psychiatrist reports, a prison management report, an infraction history, a job history, certificates and degrees earned in prison, and letters of support by those impacted by his life.

At the end of the three-day resentencing hearing, the trial court resentenced defendant to two consecutive LWOP sentences and 51 to 71 months imprisonment for armed robbery. The trial court entered an order with over 100 findings and with analysis of the mitigating factors as required in section 15A-1340.19B. The trial court recognized multiple times in the findings that defendant told people he killed his grandparents because his grandfather had sexually abused his sister and his grandmother was complicit. The trial court found inconsistencies in the stories and that defendant failed to recognize and address the many "contradictions and inconsistencies." The trial court found that defendant was a compulsive liar and found defendant utilized the claims about sexual abuse and drugs and alcohol "in an effort to get a more favorable outcome in this case." The trial court concluded in the order that it found defendant's "case is not one of transient immaturity. Instead, the [c]ourt f[ou]nd this is a rare case where defendant should be sentenced to life imprisonment without the possibility of parole." Defendant timely appealed.

**II.**

Defendant appeals of right pursuant to N.C.G.S. §§ 7A-27(b) and 15A-1444(a). Defendant raises multiple constitutional challenges as applied to him. Defendant seeks review of the following: (1) a constitutional as-applied challenge pursuant to the Eighth Amendment and Article I, § 27 of the North Carolina Constitution for re-sentencing him to life without parole; (2) a constitutional as-applied challenge that the trial court disregarded mitigating evidence and determined the mitigating evidence carried little weight; and (3) that the "*Miller*-fix" law is unconstitutional as-applied to him because it lacks a presumption against life without parole sentences or at least "sufficient protections" to only sentence life without parole to the "rare juvenile" offenders that cannot be rehabilitated.

Defendant states this Court reviews constitutional challenges de novo and seeks de novo review of each issue. Yet, he also challenges multiple factual findings in the trial court's order and argues the trial court improperly weighed some evidence and ignored other mitigating evidence. We review the factual findings in a trial court's order to determine whether competent evidence supports the findings. *State v. Sims*, 260 N.C. App. 665, 671 (2018), *aff'd*, 912 S.E.2d 767 (N.C. 2025). Unchallenged findings are binding on appeal. *State v. Golphin*, 292 N.C. App. 316, 325 (2024). Further, we review sentencing orders that weigh the *Miller* factors for abuse of discretion. *Id.* at 322; *State v. Sims*, 912 S.E.2d 767, 780 (N.C. 2025).

**A.**

Defendant asserts constitutional challenges and quotes the language of landmark cases from the Supreme Court of the United States to support his argument. *Miller*, 567 U.S. at 476; *Montgomery v. Louisiana*, 577 U.S. 190 (2016); *Jones v. Mississippi*, 593 U.S. 98 (2021). Our Courts have handled multiple appeals involving the resentencing of juveniles with mandatory LWOP sentences since the *Miller* Court retroactively applied its holding that these mandatory sentences violate the Eighth Amendment. Our Supreme Court issued three opinions just this year addressing this area of law. *State v. Borlase*, 912 S.E.2d 795 (N.C. 2025); *Sims*, 912 S.E.2d 767; *State v. Tirado*, 387 N.C. 104 (2025). Accordingly, we recognize and consolidate what has been established in the case law thus far.

First, the Supreme Court's holding in *Miller* is more limited than defendant asserts. In *Miller*, it held a juvenile may only be "sentenced to life without parole . . . if the sentence is not mandatory and the sentencer . . . has discretion to impose a lesser punishment." *Jones*, 593 U.S. at 100 (citing *Miller*, 567 U.S. at 479). The Court in *Miller* reasoned that by providing discretion to the trial court in which it could consider the youth of the murderer, it would result in fewer LWOP sentences. *Id.* at 112. While the U.S. Supreme Court clarified that it did not require an explicit finding that the juvenile was incorrigible to hand down a LWOP sentence, it also stated that the lack of this required finding was not permission to give LWOP sentences to juveniles "whose crimes reflect transient immaturity" because such action would be a "disproportionate" punishment and violation of the Eighth Amendment.

*Montgomery*, 577 U.S. at 211 (cleaned up).  Our Supreme Court summarized the current Supreme Court of the United States case law as follows:

> (1) juvenile offenders may not be subject to the death penalty under any circumstances; (2) juvenile offenders may not be subject to mandatory life sentences without the possibility of parole; (3) state laws establishing juvenile sentencing parameters must, at a minimum, provide discretion to the sentencing authority to impose a lesser sentence than life without parole for juvenile offenders; (4) [the] Supreme Court of the United States case precedent does not require a sentencing authority to make a specific finding that a juvenile offender is incorrigible before the sentencer exercises its discretion to impose a sentence of life without parole; and (5) individual states are free to create additional limits and requirements regarding the sentencing of juvenile offenders.

*State v. Conner*, 381 N.C. 643, 666 (2022) (cleaned up).

Second, in response to *Miller*, our General Assembly enacted and codified N.C.G.S. § 15A-1340.19A to 15A-1340.19D, the "*Miller*-fix" statutes, to provide the trial court with discretion and a framework to consider whether the juvenile is to be sentenced to life imprisonment with or without parole.  *Conner*, 381 N.C. at 663.  Our Supreme Court reviewed the constitutionality of these provisions and determined the statutes are facially constitutional.  *Id.* at 666.

Third, our Supreme Court recently articulated the Eighth Amendment affords greater protections than the plain text of Article I, § 27, and therefore, review of the limits of the Federal Constitution covers the protections afforded under Article I, § 27.  *Tirado*, 387 N.C. at 105.  *But see State v. Kelliher*, 381 N.C. 558, 584 (2022) (stating "article I, section 27 of the North Carolina Constitution need not be

interpreted in lockstep with the Eighth Amendment to the United States Constitution," when deciding whether consecutive sentences of life with parole ran afoul of Article I, section 27). Further, our Supreme Court has held that the "*Miller*-fix" statutes "do not incorporate a presumption in favor of a sentence of life without parole." *State v. James*, 371 N.C. 77, 99 (2018). In light of this precedent, we review defendant's challenges to the constitutionality of his sentence within the framework of the "*Miller*-fix" statutes.

**B.**

The "*Miller*-fix" statutes expressly require the trial court to hold a sentencing hearing to determine whether the defendant's sentence should be the lesser sentence, life imprisonment with parole, or the greater punishment of life imprisonment without parole. N.C.G.S. § 15A-1340.19B(a)(2)(2023). During the hearing, the defendant

> may submit mitigating circumstances to the court, including, but not limited to, the following factors:
>
> (1) Age at the time of the offense.
> (2) Immaturity.
> (3) Ability to appreciate the risks and consequences of the conduct.
> (4) Intellectual capacity.
> (5) Prior record.
> (6) Mental health.
> (7) Familial or peer pressure exerted upon the defendant.
> (8) Likelihood that the defendant would benefit from rehabilitation in confinement.
> (9) Any other mitigating factor or circumstance.

N.C.G.S. § 15A-1340.19B(c)(2023). The trial court is then required to consider any of the presented mitigating factors to determine the defendant's sentence of life imprisonment with or without parole. N.C.G.S. § 15A-1340.19C(a)(2023). Further, the trial court must include findings regarding the "absence or presence of any mitigating factors and such other findings as the court deems appropriate to include in the order." *Id.* Upon review, we yield determinations of credibility and the weight given to the mitigating factors to the trial court's judgment, recognizing it is not our "role to substitute our own judgment for that of the sentencing judge." *Golphin*, 292 N.C. App. at 328 (cleaned up). We only consider the weight given to the findings for the purpose of determining whether the trial court abused its discretion. *Id.* at 325–26.

Defendant broadly challenges the trial court's findings as focused upon his credibility rather than his ability to be rehabilitated. We limit our review to the specifically challenged findings of fact and consider the unspecified challenged findings to be conclusive on appeal. *See State v. Phillips*, 151 N.C. App. 185, 190–91 (2002). Defendant specifically challenges findings of fact 70, 82, 92, 95, 97, 98, 99, 100, 101 and finding 8 (within the mitigating factors section) as unsupported by the evidence, and therefore, unable to support the trial court's conclusion that defendant's actions were not the result of transient immaturity.

Specifically, defendant challenges finding of fact 70 that "defendant never saw his grandfather sexually molest his sister Jenny." Defendant argues the court also

admitted in finding of fact 96 that no one can contradict defendant's claim because he is the only one living of the four people that allegedly knew about any sexual molestation. However, looking to the evidence in the record, there is also evidence as articulated in other unchallenged findings that defendant provided various inconsistent stories as to why he murdered his grandparents: from being under the influence of drugs, to the allegations about his sister being molested, to only killing his grandmother because she tried to protect his grandfather, to claiming his cousin murdered his grandparents, to having no particular reason for shooting his grandparents, and stating he was not angry with them. As stated by the trial court in finding 104,

> defendant elected to make a statement to the [c]ourt . . . . The [c]ourt, having observed defendant's demeanor and having listened to his statement, finds defendant's statement was self-serving and not genuinely remorseful because, in part, defendant failed to meaningfully address the many contradictions, inconsistencies, and misrepresentations in his previous statements, both under oath and not under oath.

Accordingly, competent evidence supports the trial court's finding of fact 70.

Next, defendant challenges finding of fact 82 that "[d]efendant exaggerated about the extent of his drug use in an attempt to help himself get a more favorable outcome in this case"; he challenges the portions of findings of fact 97, 98, 99, and 100 that discuss defendant exaggerating about his drug use for a more favorable outcome. Yet defendant also admits he lied about his drug use during the 1998 trial proceedings. Multiple findings state defendant lied to mental health experts, friends,

attorneys, his mother, prosecutors, and the jury repeatedly. Additionally, evidence tends to show defendant was not under the influence of drugs "to any appreciable degree" at the time of the murder nor the day after the murder. Accordingly, competent evidence supports these findings.

Defendant also challenges the portions of findings of fact 92, 95, and 100 that state defendant was lying by saying he saw his grandfather sexually abuse his sister. Yet the subparagraphs of finding of fact 92 demonstrate the various inconsistencies each time defendant told this to a different mental health expert. The unchallenged findings suggest defendant had no history of mental, physical, or sexual abuse, that he believed his grandparents were the nicest people he knew, that he was not angry with his grandparents, that his sister committed suicide due to Crohn's disease, and that at other times he blamed alcohol and drug use as the reason he murdered them. The unchallenged findings do provide competent evidence to support the trial court's determination that defendant lied about the alleged sexual abuse. Again, this Court's duty is not to reweigh the evidence or make credibility determinations, we are instead tasked with the duty to review for errors of law.

Defendant challenges finding of fact 101, "since beginning his prison sentence for the murder convictions, [d]efendant has intentionally and deliberately lied to friends and mental health experts to attempt to gain sympathy and help, and as it turns out now, to attempt to help himself get a more favorable outcome in this case." Multiple unchallenged findings discuss how compelling defendant's versions of his

story are, there are also additional instances of defendant's veracity and truthfulness being questioned for false allegations against staff at the correction center. Defendant wrote an article discussing alcohol as the reason behind the murders despite telling mental health experts at other times that it was drug use and his grandfather sexually abusing his sister as reasons for the murders. At times he said he was under the influence of drugs and alcohol during the murders and at other times he denied drug use.

There is evidence in the record he was not under the influence of drugs or alcohol during the murders. The different versions of defendant's account of the murders and the responses by those who heard it support the trial court's finding that defendant utilized various story lines to gain sympathy and help. Importantly, these various accounts were told by defendant in his 20s, 30s, and 40s. Accordingly, competent evidence supports the trial court's finding.

Defendant challenges the trial court's finding 8 within the mitigating factors section as unsupported by the evidence. However, having discussed previous findings that state similar findings to mitigating factor 8, we determine there is competent evidence to support this finding. Defendant argues the trial court placed too much focus on his credibility and too little focus on his ability to rehabilitate. Yet, it is within the trial court's purview to weigh the evidence and consider defendant's credibility. *See Sims*, 260 N.C. App. at 675. The trial court provided extensive

findings to support its determination of doubt in defendant's rehabilitation given the lengthy pattern of lying that continued into his adulthood.

The trial court specifically stated it had considered all the evidence and carefully weighed the issue of defendant lying not just around the time of the murder but throughout his prison sentence. The trial court determined that "his behavior has not changed, and that he continues to lie in an effort to get a favorable outcome." This is not a violation of defendant's constitutional rights. Trial courts must comply with the statutory requirements, but having complied, the outcome is within their discretion. Review of the trial court's discretion is limited to our standard for abuse of discretion. Accordingly, the evidence supports the findings and we will not reweigh the evidence.

## C.

Having determined competent evidence supports the challenged findings, we now consider defendant's argument the trial court had "failed to give effect to a significant amount of mitigating evidence." Defendant argues the trial court erred because he demonstrated he has changed and that he does not represent the rare case in which LWOP is necessary. He suggests the court failed to carefully consider his potential for rehabilitation and that it instead put too much emphasis on the lies he told. On this basis defendant suggests the trial court "misapprehended" the standard set by the Eighth Amendment and Article I, § 27. We do not discern a misapprehension of the law by the trial court.

The trial court has a duty to consider any mitigating evidence presented by a defendant. *See* § 15A-1340.19C(a). Our Courts require the trial court to consider the mitigating factors in section 15A-1340.19C(a) when the defendant provides mitigating evidence to support those factors. *State v. Antone*, 240 N.C. App. 408, 412 (2015). The trial court is not required to restate every piece of mitigating evidence to properly weigh the evidence. *Golphin*, 292 N.C. App. at 326, 331; *see State v. Borlase*, 292 N.C. App. 54, 59–62 (2024); *see also Sims*, 260 N.C. App. at 674–82. Nor does the existence of mitigating evidence guarantee a certain weight. *Golphin*, 292 N.C. App. at 331. Our review is limited to whether the trial court abused its discretion when it considered the mitigating factors. *Antone*, 240 N.C. App. at 410.

The trial court considered all the statutory factors pursuant to section 15A-1340.19B. The trial court included the following:

> Pursuant to N.C.G.S. section 15A-1340.19B, the [c]ourt specifically considered the following factors in its determination in this case:
>
> 1.     Age. Again, the [c]ourt finds that defendant was approximately 17 years, 7 months, and 14 days old at the time of the murders. The [c]ourt finds defendants' chronological age is a mitigating factor. However, the [c]ourt assigns this factor little weight because at the time of the offense, defendant was only 5 months away from the age of criminal adult responsibility. Considering Miller v. Alabama to be instructive as to this factor, the [c]ourt notes that the two defendants in Miller, Jackson and Miller, were 14 years old at the time they committed the murders for which they were convicted. The [c]ourt therefore finds that defendant's age in this case does not carry significant mitigating weight.
>
> 2.     Immaturity. The [c]ourt has considered defendant's immaturity and finds it is not significantly mitigating based on all of the evidence.

The [c]ourt notes that any juvenile by definition is going to be immature compared to an adult, but finds based on the evidence presented that defendant was of average maturity for his age, and finds there was no evidence presented of any specific immaturity particular to defendant that mitigated the culpability of his conduct in this case. The [c]ourt finds this factor does not carry significant mitigating weight.

3.    <u>Ability to appreciate the risks and consequences of the conduct</u>. The [c]ourt has considered defendant's ability to appreciate the risks and consequences of his conduct and does not find this to be significant considering that not only was he an active participant in the murders, but he was also the only participant as he acted alone. He searched for a gun and when he finally got one, wasted no time in carrying out the murders with precision. Defendant intended to kill and did kill his grandparents. The [c]ourt also finds that defendant had a guilty-mind and knew right from wrong when he attempted to hide or destroy evidence (the grandfather's wallet and the rifle he used to kill his grandparents) that would inculpate him, when he tried to escape detection for these crimes by attempting to create an alibi, and when he lied over and over again about his actions and the murders in this case. Defendant knew the difference between right and wrong, and knew the nature and consequences of his actions and their wrongfulness. Defendant made his own choice to commit these murders. The [c]ourt finds this factor does not carry significant mitigating weight.

4.    <u>Intellectual capacity</u>. The [c]ourt does not find this to be a mitigating factor based on the fact that defendant's IQ is in the low average range and did not mitigate the culpability of his conduct in this case.

5.    <u>Prior record</u>. The [c]ourt finds that although defendant did not have any prior convictions, he engaged in criminal activity by possessing and using illegal drugs to some extent as a juvenile as set forth above in the findings although he was never charged with such a crime. Accordingly, the [c]ourt finds this factor is mitigating, but does not carry significant mitigating weight. The [c]ourt also finds that defendant again engaged in criminal activity later by committing perjury during his trial, but was never charged with such crime.

6.    <u>Mental health</u>. The [c]ourt has considered all of the mental health reports and testimony in this case, and finds that nothing reduces his

culpability for his conduct in this case. Defendant knew exactly what he was doing and knew the difference between right and wrong. Defendant also knew the nature and consequences of his actions and their wrongfulness. The [c]ourt finds this factor does not carry significant mitigating weight.

7.     <u>Familial or peer pressure exerted upon defendant</u>. As set forth above, defendant had a loving family and had a good family situation, and defendant loved his childhood and had no history of mental, physical, or sexual abuse. The [c]ourt finds that defendant had two parents who loved him, were present at this trial, supported him at his trial and even testified for him. Again, defendant was the shooter and the only shooter, and he acted alone in planning the murders, carrying out the murders and in trying to avoid detection after he committed the murders. The [c]ourt finds there was no familial or peer pressure exerted upon defendant to cause him to do any of these things. Defendant knew the difference between right and wrong, and knew the nature and consequences of his actions and their wrongfulness. Defendant made his own choice to commit these murders. The [c]ourt has carefully considered this fact and finds it does not carry any mitigating weight.

8.     <u>Likelihood that defendant would benefit from rehabilitation in confinement</u>. The [c]ourt carefully considered the likelihood defendant would benefit from rehabilitation in confinement, including evidence that since he has been in prison he has completed numerous programs, he has supporters, and has helped others, is a very good dog trainer and has made friends. The [c]ourt also considered the fact that, before he ever went to prison, he also had supporters and friends, even close friends and a best friend.

The Court also considered that while incarcerated, defendant committed an infraction on or about 12 May 2011, when defendant was 31 years old. The [c]ourt appreciates and recognizes that defendant's infractions are low in number, but numbers alone without considering the facts of the entire case do not tell the entire story. In this infraction, defendant's allegations that he was assaulted by a staff member "were proven through an extensive investigation to be false[,]" and defendant ultimately pled guilty to False Allegations Against Staff. Defendant falsely accused the staff member of something the staff member did not do and could have resulted in criminal charges being filed against the staff member, just like when, on the Third occasion defendant gave

testimony, defendant falsely accused Jamie Southern and Rodney Miller of something they did not do and could have resulted in criminal charges being filed against them.

Moreover and even more concerning to the [c]ourt, defendant continues to lie about significant events in this case, about his grandfather sexually molesting his sister Jenny and about his drug use as set forth above. The [c]ourt finds that it is in defendant's nature to lie anywhere, anytime for any reason, and that he is a convenient liar to fit the exigencies of the moment. In short, the [c]ourt finds that his behavior has not changed, and that he continues to lie in an effort to get a favorable outcome in this case. Defendant continues to lie in an attempt to have his sentences changed from life without parole, to life with the possibility of parole. The [c]ourt has thoughtfully considered this factor and finds that it does not carry any mitigating weight.

9.      Any other mitigating factor or circumstance. The [c]ourt has also carefully considered defendant's other requested mitigating factors set forth in defendant's exhibit # 17 and, considering all of the findings set forth above and below, and considering the totality of the facts and circumstances of this case, as well as the credible and believable evidence in this case, finds that they do not carry any mitigating weight.

Apart from challenging mitigating factor 8, defendant broadly argues the trial court's findings and conclusions were incorrect because he was rehabilitated. Defendant highlights the 78 other mitigating factors in his exhibit 17 to support his contention he was rehabilitated, and therefore, he is not one of the "rare" youths that is "permanently incorrigible." However, what defendant is challenging is the weight and credibility the trial court assigned to the mitigating factors.

Defendant disagrees with the trial court's conclusion and argues there needs to be exceptional circumstances for him to qualify as a "rare case" in which LWOP is proper. Despite defendant's contention, it is not a violation of his Eighth Amendment

rights for a trial court to weigh the mitigating factors differently than how defendant deems it best to weigh them. The trial court is a fact-finding court that sits in a unique position in which it judges the credibility and weight that should be given to the evidence submitted. *See Borlase*, 912 S.E.2d at 804–05; *see also Phelps v. Phelps*, 337 N.C. 344, 357 (1994). As an appellate Court, we are limited to the record submitted to us and will not presume the trial court erred. *Borlase*, 912 S.E.2d at 808. Further, our case law and precedent recognize this distinction and limit this Court on review. *Sims*, 912 S.E.2d at 780 (cleaned up) ("Our appellate courts will not reverse a discretionary sentence merely because the sentencer could have said more about mitigating circumstances. It is not the role of an appellate court to substitute its judgment for that of the sentencing judge.").

Having reviewed the order and the trial court's detailed findings and conclusions, we conclude the trial court did not abuse its discretion. "A trial court may be reversed for abuse of discretion only upon a showing that its ruling was manifestly unsupported by reason and could not have been the result of a reasoned decision." *State v. McGrady*, 368 N.C. 880, 893 (2016) (cleaned up). Defendant may disagree with the weight and credibility given to defendant's evidence, but the order reflects that the trial court did carefully consider all the evidence presented and ultimately concluded, "this case is not one of transient immaturity. Instead, the [court] [found] this is a rare case where defendant should be sentenced to life imprisonment without the possibility of parole." Our Supreme Court recently

referred to *Jones* as support in its articulation that it is the express refusal by a trial court to consider a mitigating circumstance that yields a possible Eighth Amendment claim. *Borlase*, 912 S.E.2d at 806–07 (quoting *Jones*, 593 U.S. at 115 n.7). In the present case, the trial court expressly states in the order that it considered all the mitigating evidence and included findings in accordance with the statutory requirements. The trial court placed less weight on the mitigating circumstances than defendant did, but that is not equivalent to an abuse of discretion.

The Supreme Court of the United States, our Supreme Court, and our General Assembly have determined that by removing the mandatory sentencing of LWOP, requiring consideration of mitigating factors, and by placing discretion within the power of the trial court, it will result in fewer LWOP sentences for the transient immature juvenile. *See Borlase*, 912 S.E.2d at 803–04. Whether the current statutory sentencing structure and the current consideration of the mitigating factors ultimately have these anticipated results, is a question of policy that is not within our purview. The trial court complied with the statutory requirements for a resentencing hearing and did not abuse its discretion. We are limited to this conclusion.

**D.**

Finally, defendant argues his Eighth Amendment and Article I, § 27 rights were violated because the "*Miller*-fix" statutes lack a presumption against LWOP. Defendant claims he is launching an as-applied constitutional challenge because he

acknowledges our Supreme Court previously rejected a facial challenge to the "*Miller*-fix" statutes. *James*, 371 N.C. at 93–94. Yet the entirety of his argument is devoted to discussing how our statutes need a presumption against LWOP, and that this missing presumption relegated defendant to a LWOP sentence. Once again, our Courts have already settled that the statute "does not presume in favor of either potential sentence," and therefore, "it satisfies the Eighth Amendment." *Borlase*, 912 S.E.2d at 803–04. Accordingly, this argument is without merit.

## III.

For the foregoing reasons, we determine the trial court did not abuse its discretion by resentencing defendant to life imprisonment without parole.

AFFIRMED.

Chief Judge DILLON and Judge TYSON concur.

Report per Rule 30(e).